The **ZACHARY TRADING INC.,** Plaintiff,

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,** Defendant.

**No. 85 Civ. 1290 (JES).**

United States District Court, S.D. New York.

Sept. 8, 1987.

Lieberman Rudolph & Nowak, New York City, for plaintiff; Arthur M. Lieberman, Michael E. Marion, of counsel.

Lipkowitz & Plaut, New York City, for defendant; Peter Jason, of counsel.

**OPINION AND ORDER**

SPRIZZO, District Judge:

The plaintiff, the named beneficiary of a $500,000 life insurance policy issued to Joseph M. Piselli by the defendant, the Northwestern Mutual Life Insurance Company ("NML"), brings this action to recover the proceeds of that policy plus punitive damages. Specifically, the plaintiff alleges that the defendant's denial of plaintiff's claim for the proceeds is a breach of its contract for life insurance. *See* Amended Complaint ("Complaint") at ¶ 11.[1]  Subject

---

**1.** In addition to the breach of contract claim, the plaintiff also alleges that the defendant negligently failed to train and supervise its employees and negligently failed to investigate fully into the health of Mr. Piselli. *See* Complaint at ¶¶ 12–21.  Moreover, the plaintiff alleges that the defendant defrauded the plaintiff by falsely representing that the policy at issue was not

subject to reinsurance when in fact the policy was reinsured for at least 90% of its face value. *See id.* at ¶¶ 22–35.

At oral argument, however, the plaintiff stated that it would not pursue these claims if the breach of contract claim fails. *See* Transcript of Oral Argument on Defendant's Motion for Summary Judgment ("Tr.") at 15.  Because the

matter jurisdiction over this action is based on diversity of citizenship.

The defendant counterclaims for recision of the policy on the ground that Mr. Piselli made material misrepresentations on his policy application. The defendant moves for summary judgment pursuant to Fed.R. Civ.P. 56, dismissing the complaint on the merits and granting the counterclaim for recision. The parties agree that New York law applies. For the reasons set forth below, the defendant's motion is granted.

## BACKGROUND

The following facts are undisputed.

In 1982, the plaintiff applied to NML for a "key-man" life insurance policy on the life of its employee, Mr. Piselli. On September 16, 1982, Mr. Piselli was examined and interviewed by Dr. Bruce Yaffe, a medical examiner for NML, as part of NML's application process. As instructed by NML, at the examination Dr. Yaffe asked Mr. Piselli a series of questions set forth in a form entitled "Declarations to Medical Examiner" ("Declaration") which were designed to elicit information about Mr. Piselli's medical history. Dr. Yaffe recorded Mr. Piselli's answers on the Declaration. Mr. Piselli then signed the Declaration, attesting that "my answers and statements are *correctly recorded, complete* and true to the best of my knowledge and belief," *see* Complaint at Exhibit B (emphasis added), and a copy of the Declaration was attached to the policy.

The Declaration contains a series of Yes/No questions. Question 34(A) inquires: "[H]ave you within the past 5 years: Had any physician or practitioner, including your usual medical attendant, examine, advise, or treat you?" The Declaration indicates that Mr. Piselli answered "Yes" to this question. Adjacent to the yes/no questions on the Declaration is a section entitled "Details and Remarks," which instructs the applicant to "use addi-

tional space provided below as required for complete details (include signs, symptoms, and diagnosis of any illness)." In reference to question 34(A), the applicant indicated that he was examined by Dr. Jeffrey Marmer for a "routine physical" in 1980. Question 44 asks the applicant to identify any attending physician consulted in connection with "Yes" answers. This question provides space for the applicant to give the name and address of the physician, the reason for and date of the consulation, and the results. No attending physicians were identified in response to question 44. Indeed, the space for response was left blank.

Question 33(K) asks "Have you ever been treated for or ever had any indication of ... anemia or other disorder of the blood?" Mr. Piselli answered "No" to this question. Question 33(J) asks "Have you ever been treated for or ever had any indication of ... [d]isorder of ... lymph glands?" Mr. Piselli answered "No" to this question as well.

Although Mr. Piselli only disclosed a "routine physical" with Dr. Marmer in 1980, it is undisputed that Mr. Piselli also had several other medical examinations during the past five years. Between September 1981 and March 1982, Mr. Piselli visited Dr. Robert Oliveri approximately ten times, principally for gonorrhea of the throat. *See* Affidavit of Deborah A. Beck ("Beck Aff.") at ¶ 5. During the summer of 1982, he saw a physician in Hong Kong at least three times complaining of abdominal cramps and diarrhea. *See id.* at ¶ 6.

More importantly, on September 1, 1982, Mr. Piselli visited Dr. Marmer complaining of loss of appetite, weight loss, and a low grade fever. During the first week of September, Dr. Marmer administered two blood tests to Mr. Piselli which revealed that Mr. Piselli's hemoglobin count was between 10.6 and 10.9 and his hematocrit was between 30.4 and 32.0. *See* Beck Aff. at ¶ 6; *see also* Beck Aff. at Exs. E & F.[2]

---

Court finds that the breach of contract claim must be dismissed, the entire complaint will be dismissed.

**2.** Both "hemoglobin count" and "hematocrit" apparently measure the ratio of red blood cells in

relationship to the volume of blood in the body. *See* E. Bander and J. Wallach, *Medical Legal Dictionary* (1970).

Dr. Marmer's examination also revealed the presence of auxilliary and bilateral inguinal lymph nodes (swollen glands in the armpit and groin areas). *See id.* at ¶ 6 & Ex. C.

As a result of this examination, Dr. Marmer referred Mr. Piselli to Doctor Shelley Brown, a specialist in hematology and oncology. *See* Affidavit of Dr. Shelley M. Brown ("Brown Aff.") at ¶ 1. Although Mr. Piselli saw Dr. Brown on September 9, 1982, just seven days before he signed the Declaration, Mr. Piselli failed to disclose this consultation as well. Dr. Brown's examination revealed that Mr. Piselli had multiple enlarged lymph nodes, the largest being 3 cm. in the groin area. *See id.* at ¶ 3. Moreover, as part of the examination, Dr. Brown drew a blood sample which indicated that Mr. Piselli had a hemoglobin count of 9.6 and a hematocrit of 28, *see id.* at Ex. B, which Dr. Brown characterized as "severely anemic," *see id.* at ¶ 4.[3]

As part of NML's standard application procedure, NML requested an Attending Physician's Statement ("APS") from Dr. Marmer, the one physician identified in the Declaration. *See* Beck Aff. at ¶ 2.[4] In the APS, Dr. Marmer revealed the undisclosed visit made by Mr. Piselli on September 1, 1982. However, because Dr. Marmer indicated on the APS that there were no subjective complaints or abnormal findings during that exam, *see id.* at Ex. A, NML did not take any adverse action based upon the nondisclosure of that visit, *see id.* at ¶ 2.[5]

The defendant has submitted to the Court uncontroverted evidence of its standard underwriting procedure, establishing that it would not have insured Mr. Piselli had it been made aware of the results of either Dr. Marmer's or Dr. Brown's examination. *See* Beck Aff. at ¶¶ 8–13; Affidavit of Dr. Robert K. Gleeson ("Gleeson Aff.") at ¶ 2. Specifically, according to the uncontradicted affidavits of NML's Manager of Claims, Deborah A. Beck, and its Associate Medical Director, Dr. Robert K. Gleeson, and NML's Medical Rating Manual ("the Manual"), where, as here, an applicant has a hemoglobin of less than 12 and a hematocrit of less than 36, the applicant is characterized as having severe anemia, and NML must decline the application. *See* Beck Aff. at ¶ 11 & at Ex. M; Gleeson Aff. at ¶¶ 12–13. Moreover, Ms. Beck states in her affidavit that, according to the Manual, the existence of the generalized enlarged lymph glands noted by Dr. Brown on September 9 also would have required NML to decline the application. *See* Beck Aff. at ¶ 12; *see also* Gleeson Aff. at ¶¶ 10–11. The plaintiff nowhere disputes Ms. Beck's or Dr. Gleeson's interpretation of the Manual.[6]

Unaware of any of Mr. Piselli's health problems, however, NML issued the life insurance policy on September 21, 1982. On March 22, 1984, Mr. Piselli passed away, within the contestable period provided under the policy.[7] Following an investigation by NML after Mr. Piselli's death, NML learned for the first time of the nondisclosures in the Declaration and, therefore, denied plaintiff's claim for death ben-

---

**3.** Doctor Brown's medical chart also indicates that Mr. Piselli "possibly fits into the category of acquired immundeficiency syndrome [AIDS]." *See* Brown Aff. at Ex. A.

**4.** Although Mr. Piselli did disclose the 1980 consultation with Dr. Marmer, Mr. Piselli misrepresented the nature of that consultation. Thus, although the Declaration indicates that he consulted Dr. Marmer for a "routine physical," it is undisputed that Mr. Piselli went to see Dr. Marmer complaining of a sore throat and anal warts. *See* Beck Aff. at Ex. C.

**5.** Contrary to Dr. Marmer's statements on the APS, however, Dr. Marmer's medical chart reveals that Mr. Piselli complained of gastrointes-

tinal discomfort, diarrhea, loss of appetite, weight loss, and a low grade fever. *See* Beck Aff. at ¶ 6 & Ex. C. Moreover, as noted above, the examination indicated the presence of enlarged lymph nodes and anemia, leading Dr. Marmer to refer Mr. Piselli to Dr. Brown.

**6.** According to the Manual, Mr. Piselli could have reapplied for insurance after one year. However, in the following year, Mr. Piselli's health deteriorated significantly and he was definitely diagnosed as having AIDS. Therefore, it is clear that NML would not have issued the policy one year later.

**7.** Mr. Piselli died of complications resulting from AIDS.

efits under the policy based upon those misrepresentations. The plaintiff then commenced the instant action seeking to recover on the policy.

## DISCUSSION

Under New York law, a material misrepresentation in an application for an insurance policy avoids the insurance contract. *See* N.Y.Insurance Law § 3105 (McKinney 1985); *Fleet Messenger Serv., Inc. v. Life Ins. Co. of North America,* 315 F.2d 593, 597 (2d Cir.1963); *Geer v. Union Mut. Life Ins. Co.,* 273 N.Y. 261, 265, 7 N.E.2d 125, 126 (1937). The plaintiff does not dispute that Mr. Piselli failed to disclose the numerous visits with various physicians, and in particular, the September 1, 1982 consultation with Dr. Marmer and the September 9, 1982 consultation with Dr. Brown. Instead, the plaintiff argues that there is a material issue of fact with respect to whether those nondisclosures were in fact misrepresentations. Specifically, the plaintiff alleges that Dr. Yaffe failed to ask Mr. Piselli question 44 on the Declaration, which asks for the names of doctors visited within the past five years and the dates of those visits. Since Dr. Yaffe allegedly never asked the question, the plaintiff argues that Mr. Piselli's failure to provide that information was not a misrepresentation.

However, under New York law, the insured and the beneficiary are bound by the representations made in the application, even if the insurance company's agent negligently failed to ask the appropriate questions. *See Pringle v. The Northwestern Mut. Life Ins. Co.,* No. 81 Civ. 5064 at 5 (S.D.N.Y. June 16, 1983); *Simon v. Government Employees Life Ins.,* 79

A.D.2d 705, 706, 434 N.Y.S.2d 447, 449 (2d Dep't 1980). Because the insured has the best knowledge of his own medical history, he has the duty to examine the policy application and correct any incorrect or incomplete answers. *See Friedman v. Prudential Life Ins. Co. of America,* 589 F.Supp. 1017, 1023 (S.D.N.Y.1984); *Minsker v. John Hancock Mut. Life Ins. Co.,* 254 N.Y. 333, 338, 173 N.E. 4, 5 (1930). This is especially true where, as here, the insured specifically represented that the answers on the declaration are correctly recorded, complete, and true. *See Friedman, supra,* 589 F.Supp. at 1023. Therefore, even assuming arguendo that Dr. Yaffe failed to ask the question, because both question 44 and the "Details and Remarks" section on the Declaration unambiguously ask the applicant to give details with respect to any visits with a physician over the past five years, Mr. Piselli's failure to provide that information is a misrepresentation as a matter of law.[8]

The Court now turns to the question of whether Mr. Piselli's misrepresentations were material. Pursuant to § 3105(b) of the New York Insurance Law, a misrepresentation is material if the insurer would not have issued the policy had it known of the facts misrepresented. *See Simon, supra,* 79 A.D.2d at 706, 434 N.Y.S.2d at 449. Pursuant to § 3105(d), in determining the materiality of an insured's failure to disclose a medical consultation, the insured is deemed to have misrepresented that he did not have the ailment which was discovered as a result of that consultation.

Although the question of materiality is generally a question of fact for the jury,

**8.** *Liberatore v. John Hancock Mut. Life Ins. Co.,* 3 A.D.2d 665, 665, 158 N.Y.S.2d 157, 158 (2d Dep't 1957), cited by the plaintiff, is inapposite. In that case, the court simply held that a plaintiff may recover the proceeds of a life insurance policy when the insured revealed in her application that she had consulted doctors and received medical treatment, even though the insured failed "to furnish *details not requested.*" by the insurer. In this case, Mr. Piselli omitted more than mere details, and in any event, Question 44 and the Details and Remarks section specifically and unambiguously requested information with respect to all doctors visited within the past five

years. While a question on an insurance application calling for information about consultations with physicians might arguably be interpreted by the average reader to exclude consultations for trivial illnesses such as a common cold, *cf. Geer, supra,* 273 N.Y. at 267, 7 N.E.2d at 127–28, certainly question 44 required Mr. Piselli to mention his visit to a specialist in hematology and oncology, which occurred just seven days before he signed the Declaration. That consultation, as well as the previous consultation with Dr. Marmer, can hardly be characterized as trivial.

*see Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.,* 53 A.D.2d 214, 216, 385 N.Y.S.2d 308, 310 (1st Dep't 1976), *aff'd,* 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977), where the uncontroverted evidence establishes that the insurer would not have issued the policy had it known of the true facts, New York courts have found materiality to be established as a matter of law. *See e.g., Vander Veer v. Continental Casualty Co.,* 34 N.Y.2d at 50, 53, 356 N.Y.S.2d 13, 15, 312 N.E.2d 156 (1974); *Borchardt v. New York Life Ins. Co.,* 102 A.D.2d 465, 468–69, 477 N.Y.S.2d 167, 169–70 (1st Dep't), *aff'd,* 63 N.Y.2d 1000, 483 N.Y.S.2d 1012, 473 N.E.2d 262 (1984); *Crotty v. State Mut. Life Assurance Co. of America,* 80 A.D.2d 801, 802, 437 N.Y.S.2d 103, 104 (1st Dep't 1981); *accord Pringle, supra,* at 3. In the instant case, Mr. Piselli's failure to disclose both the September 1, 1982 consultation with Dr. Marmer and the September 9, 1982 consultation with Dr. Brown are deemed to be misrepresentations that he did not have anemia or enlarged lymph glands. *See* N.Y.Insurance Law § 3105(d).[9] Since the uncontroverted affidavit of Ms. Beck and Dr. Gleeson, as well as NML's Manual all establish that NML would have rejected the application had it known of either of those two ailments, the misrepresentations are material as a matter of law. *See Friedman, supra,* 589 F.Supp. at 1026–27; *Pringle, supra,* at 9; *Crotty, supra,* 80 A.D.2d at 802, 437 N.Y.S.2d at 104.[10]

## CONCLUSION

As a matter of law, the Court concludes that Mr. Piselli made material misrepresentations in his application for life insurance. Therefore, the defendant is entitled to summary judgment in its favor on its counter-

claim for recision and summary judgment dismissing plaintiff's claim for the proceeds of the policy.

The parties shall submit an appropriate proposed judgment to the Court within ten days of the date of this Opinion and Order. The Clerk of the Court is directed to close the above-captioned action.

It is SO ORDERED.

---

**9.** Since § 3105(d) deems plaintiff's nondisclosure of the medical consultations to be a misrepresentation that he did not have enlarged lymph glands or anemia, it is irrelevant whether Mr. Piselli was aware of those ailments when he signed the Declaration.

**10.** The suggestion in plaintiff's memorandum that the defendant is at fault for Mr. Piselli's misrepresentations because it did not investigate further after Dr. Marmer's APS revealed the undisclosed September 1, 1982 visit, *see*

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 39, lacks merit. Since Dr. Marmer stated, albeit falsely, that the visit was merely for a routine physical, NML obviously had no reason to believe that further inquiry was necessary, and certainly NML did not waive its right to recind the policy due to a material misrepresentation. *See Fleet Messenger, supra,* 315 F.2d at 598.