WEDTECH CORP., f/k/a Welbilt Electronics Die Corp., and the Official Committee of Unsecured Creditors of Wedtech f/k/a Welbilt Electronic Die Corp., Plaintiffs,

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

No. 89 CIV 6192 (LBS).

United States District Court, S.D. New York.

June 11, 1990.

Pollner, Mezan, Stolzberg, Berger & Glass, P.C., New York City, for plaintiff Wedtech Corp.

Stroock & Stroock & Lavan, New York City, for plaintiff Official Committee of Unsecured Creditors of Wedtech; Carla T. Main and Brian M. Cogan, of counsel.

Wolf Popper Ross Wolf & Jones, New York City, for Shareholder Class Action plaintiffs; Ellen P. Chapnick, of counsel.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendant Federal Ins. Co.; Thomas W. Wilson, Jonathan C. Thau, Dennis Justin Kelly, and John F. McCarrick, of counsel.

## OPINION

SAND, District Judge.

This action arises from a dispute concerning two policies for directors and officers liability insurance which obligated an insurance company to pay certain losses for which an insured corporation indemnified its officers and directors. The defendant insurance company moves to dismiss on the grounds that plaintiffs' single claim for a declaratory judgment that the policies are not void *ab initio* is not ripe, that the complaint has not alleged that certain conditions precedent occurred, and that plaintiffs do not have standing. Defendant moves in the alternative for a more definite statement. Plaintiffs cross move for summary judgment on their claim. For the reasons stated below, defendant's motion is denied and plaintiffs' motion is granted.

### Background

On October 1, 1984, plaintiff Wedtech Corp. ("Wedtech"), now a debtor in a Chapter 11 bankruptcy proceeding before the United States Bankruptcy Court, applied to defendant Federal Insurance Company ("Federal") to obtain directors and officers ("D & O") liability insurance coverage for its directors and officers and for the corporation itself. On or about October 4, 1984, Federal issued to Wedtech a policy to cover the period from September 29, 1984 until September 29, 1985. The policy provided that under certain conditions Federal would pay on behalf of Wedtech:

all loss for which [Wedtech] grants indemnification to each [officer and director], as permitted or required by law, which such [officer and director] has become legally obligated to pay on account of any claim(s) made against him, individually or otherwise, during or after the Policy Period for a Wrongful Act ...

The policy defined "loss" as:

the total amount which any Insured Person(s) become legally obligated to pay on account of all claims made against them for Wrongful Acts with respect to which coverage hereunder applies, including, but not limited to, damages, judgments, settlements, costs and Defense Costs.

The policy further indemnified directors against claims for which they were not indemnified by Wedtech.

Additional provisions in the policy addressed representations by the insureds and severability. These provisions provided:

In granting coverage under this policy to any one of the Insureds, the Company has relied upon the declarations and statements in the written application for coverage. All such declarations and statements are the basis of such coverage and shall be considered as incorporated in and constituting part of the policy.

The written application for coverage shall be construed as a separate application for coverage by each of the Insured Persons. With respect to the declarations and statements contained in such written application for coverage, no statement in the application or knowledge possessed by any Insured Person(s) shall be imputed to any other Insured Person(s) for the purpose of determining the availability of coverage with respect to claims made against any Insured Person(s) whether or not the Insured Organization grants indemnification.

Federal issued a second policy with substantially identical terms for the period from September 29, 1985 to September 29, 1986. Prior to the expiration of the second policy, Federal notified Wedtech that it was modifying the terms of all of its D & O policies and that pursuant to New York Insurance Law the term of the policy was automatically extended until November 22, 1986.

On or about November 19, 1986, Wedtech notified Federal that it had become the subject of government investigations. A series of lawsuits in which Wedtech's former officers and directors are named as parties has since been consolidated for pretrial purposes before this Court under the caption *In Re Wedtech Securities Litigation* (MDL 735). Several former directors and officers of Wedtech have also been convicted of various crimes.

By letter dated November 20, 1986, Federal informed Wedtech that it was cancelling Wedtech's insurance, effective January 19, 1987. On November 24, 1986, Wedtech elected to purchase an extended 90–day reporting period in accordance with the terms of the second policy, but Federal advised Wedtech that the tendered premium would not be accepted pending an investigation into whether the policies would be rescinded. On December 15, 1986, Wedtech filed for protection under Chapter 11 of the Bankruptcy Code.

By letter dated March 3, 1987 Federal advised all of Wedtech's directors and officers that:

> [Federal] is rescinding the [D & O] policies as to all past and present Wedtech directors and officers.
>
> Federal is rescinding these policies because it has learned that Wedtech and its directors and officers have concealed material information and have provided false information in connection with applying for and maintaining the above-referenced policies from Federal. As a result, Federal was provided no basis upon which it could validly assess the risk it was asked to underwrite and, in fact, Federal would not have underwritten and maintained the risk had it been provided true and material information regarding Wedtech.
>
> Accordingly, the above-referenced policies are void *ab initio* as to all directors and officers of Wedtech.

Federal has not returned the premiums paid during the periods of the policies, arguing that the first two periods have expired and that the premiums for the extension periods should be held in escrow.

Federal next petitioned the Bankruptcy Court for an order pursuant to 11 U.S.C. § 105 declaring that the D & O policies, or more specifically Federal's rescission of them, were not subject to the automatic stay provision of the Bankruptcy Code on the theory that the policies were not part of Wedtech's estate or in the alternative were "subject to an extremely substantial and viable adverse claim" that Federal "can rescind or has rescinded" the policies which

should be "subject to a court of plenary jurisdiction." Transcript of Bankruptcy Proceeding ("Bank. Tr.") dated May 6, 1987 at 4. Judge Blackshear denied the motion, finding that the insurance policy was the property of the estate.

Wedtech and plaintiff Official Committee of Unsecured Creditors of Wedtech ("Creditors Committee") filed this action on September 20, 1989 seeking a declaratory judgment that "the Policies are not void *ab initio* and are in full force and effect with respect to those directors and officers who acted in good faith in the performance of their duties for Wedtech." Complaint ¶ 28. Defendant moved to dismiss on the ground that the Court was not presented with a justiciable controversy, in part because Wedtech had not granted indemnification to any of the company's officers or directors.

Plaintiffs cross moved for summary judgment on their claim and eventually provided evidence by way of a reply affidavit from a current director of Wedtech that the Wedtech Board of Directors had unanimously adopted resolutions providing:

> [Wedtech], subject to the limitations set forth in the following paragraph, indemnifies General Richard Cavazos (Ret.) against expenses, including attorneys' fees, judgments, fines, and amounts held in settlement actually and reasonably incurred by General Cavazos in connection with his defense in all of the suits in ... *In Re Wedtech Securities Litigation* ... in which General Cavazos is named a defendant by reason of the fact that he was a director of [Wedtech] from May 31, 1985 until September 15, 1987 when he resigned, and to the best of the Board's knowledge acted as a director in good faith and in a manner he reasonably believed to be in the best interest of [Wedtech] ...
>
> [T]his indemnification, which shall not and does not obligate [Wedtech] to provide any legal representation to or incur any expenses for General Cavazos, is limited by and to the coverage provided in the [D & O policy] which [Wedtech] purchased from [Federal] ...

The affidavit also indicates that General Cavazos was asked to serve as Chairman of the Board of Wedtech after its bankruptcy filing specifically because he was "untainted by the Wedtech scandal."

Defendant continues to maintain that neither plaintiff has standing to bring this action; that plaintiffs' claim is deficient because they have not pled the occurrence of certain conditions precedent; and that the case is not ripe for various reasons including the claim that the purported indemnification was not properly accomplished. The Court will begin by discussing the merits of plaintiffs' claim, which defendants contest only cursorily, and will then turn to defendant's various objections.

### Discussion

■ For the purposes of a motion to dismiss, the factual allegations in the complaint must be accepted as true, *Dwyer v. Regan*, 777 F.2d 825, 828–29 (2d Cir.1985), *modified*, 793 F.2d 457 (1986), and a complaint must be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 236, 94 S.Ct. at 1686 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). With respect to summary judgment, Fed.R.Civ.P. 56 stipulates that a motion shall be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The Court must "resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion ..." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

■ Under New York law, fraud in the inducement can render an insurance policy void *ab initio*. *Kantor v. Nationwide Life Ins. Co.*, 16 A.D.2d 701, 227 N.Y.S.2d 703, 704 (2nd Dep't 1962) (material false statements in an application for insurance will relieve insurer of liability if it can demonstrate that it would not have issued the policy if it had known the true facts); *Eastern Dist. Piece Dye Works, Inc. v. The Travelers Ins. Co.*, 234 N.Y. 441, 449–50, 138 N.E. 401 (1923). Under such circumstances, the insurance company is entitled to rescind the policy. *INA Underwriters Ins. Co. v. D.H. Forde & Co., P.C.*, 630 F.Supp. 76, 77 (W.D.N.Y.1985). Thus, a D & O policy can be found void *ab initio* and rescission deemed appropriate if the policy was obtained through a material misrepresentation, even when there are officers and directors who had no knowledge of the fraud. *See Shapiro v. American Home Assurance Co.*, 584 F.Supp. 1245, 1251–53 (D.Mass.1984).

■ Where the insurance policy contains a severability provision, however, some of the officers and directors might still be entitled to coverage. In *Shapiro v. American Home Assurance Co.*, 616 F.Supp. 900, 903–05 (D.Mass.1984), two former officers and directors sought a declaration that they were covered under three Securities Act Liability policies, and the insurance company argued that the policies were void in their entirety because of false SEC registration materials submitted to the insurance company. A provision in the policies at issue provided that the "Insurance" was to be:

> construed as a separate contract with each Insured so that except as aforesaid, as to each Insured, the reference in this Insurance to the Insured shall be construed as referring only to that particular Insured, and the liability of the Insurer to such Insured shall be independent of its liability to any other Insured.

Although this severability provision did not explicitly address whether a false representation by one insured in obtaining insurance precluded coverage for other insureds, the Court found based upon a reading of the entire policy and consideration of its purpose that the "manifest intent" of the parties was to provide coverage for each insured unless that insured participated in the fraud.

The intent of the parties to the insurance policy in this case to bar coverage only for those insureds who participated in the fraudulent inducement is even more apparent than in *Shapiro*. Immediately after a discussion of the "declaration and statements" relied upon by Federal in the application for coverage, the policies indicate that no statement in the application or knowledge on the part of one insured is to be imputed to another insured in determining the availability of coverage. The provision further indicates that the written application for coverage is to be construed as a separate application by each insured.

■ Defendant opposes plaintiffs' cross motion on the grounds that there remain factual questions relating to "[bases] for rescinding the Policies as to each former director and/or officer of Wedtech" and whether "various exclusions in the [policies] may preclude coverage with respect to claims for relief asserted against Wedtech's directors and officers in the securities litigation." Defendant's Reply Memorandum at 24. The presence of these fact issues does not preclude the granting of the relief sought by plaintiffs in this action however. As we read the complaint, the Court has not been asked to resolve whether any director or officer is entitled to coverage, but only whether the policies were void *ab initio* with respect to each and every director regardless of whether he participated in the alleged fraudulent inducement. The Court will consider below the merits of defendant's argument that plaintiffs' action is not ripe.

■ Defendant appears to challenge the standing of both plaintiffs to bring this action. In the D & O policies, Wedtech and Federal agreed that Federal would pay on behalf of Wedtech all loss for which Wedtech granted indemnification to each officer and director. The policies are clearly third-party beneficiary contracts, in which Federal is the promisor, Wedtech the promisee

and the officers and directors third-party beneficiaries. Under New York law, a promisee for the benefit of third parties may enforce the promise on behalf of the third parties. *Berger v. Heckler,* 771 F.2d 1556, 1564 (2d Cir.1985); *In re Spong,* 661 F.2d 6, 10 (2d Cir.1981). Therefore, Wedtech can clearly bring this action in an effort to enforce Federal's obligation to pay the directors and officers. Additionally, any argument that the case should be dismissed because Wedtech is not a real party in interest is foreclosed by Fed.R. Civ.P. 17(a) which provides that "a party with whom or in whose name a contract has been made for the benefit of another ... may sue in that person's own name without joining the party for whose benefit the action is brought." Because we find that Wedtech has standing to pursue this claim and because Creditors' Committee seeks no independent relief, we need not decide whether Creditors' Committee has standing.

■ Defendant argues that plaintiffs' complaint should be dismissed because plaintiffs have not pled satisfaction with certain contractual conditions precedent. Specifically, defendant contends that the contract required that Wedtech satisfy the $100,000 deductible, indemnify a director or officer, and obtain an undertaking from a director or officer [1] before seeking performance from Federal.

It is settled law, however, that when "it becomes clear that one party will not live up to a contract, the aggrieved party is relieved from the performance of futile acts or conditions precedent." *Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.,* 135 A.D.2d 891, 522 N.Y.S.2d 292 (3rd Dep't 1987) (citing *Allbrand Discount Liquors v. Times Square Stores Corp.,* 60 A.D.2d 568, 399 N.Y.S.2d 700 (2nd Dep't 1977)). *See also Kooleraire Serv. & Installation Corp. v. Board of Educ. of City of N.Y.,* 28 N.Y.2d 101, 106, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971).

---

**1.** Defendant contends that the obligation to obtain such an undertaking arises from Wedtech's by-laws. It presumably became a condition precedent to the policies by virtue of the clause in the policies which stipulates that the extent to which Wedtech is to indemnify the directors and officers is to be established by statutory or common law or duly effective charter, by-law, resolution or other written agreement.

By informing Wedtech that it was rescinding the policies as to all past and present Wedtech directors and officers and that it was Federal's position that the policies were void *ab initio* as to all the insureds, Federal clearly and unambiguously communicated that it no longer intended to perform under the policies.

In *Federal Sav. and Loan Ins. Corp. v. Oldenburg*, 671 F.Supp. 720, 724–25 (D.Utah 1987), the FSLIC, acting as conservator for an insured institution, brought an action seeking a declaratory judgment that a provision in a D & O insurance policy obligating an insurance company to pay "all Loss" for which the insured institution "grant[ed] indemnification" to its officers and directors and which the officers and directors became legally obligated to pay could be enforced by the FSLIC. The insurance company in *Oldenburg*, like Federal, contended that the complaint should be dismissed because FSLIC did not have standing and because certain conditions precedent—the directors paying for a loss and the insured institutions indemnifying the directors for the loss—had not occurred. The Court found that it was presented with a justiciable controversy despite the nonoccurrence of these conditions precedent because the insurance company had anticipatorily repudiated the insurance policy by sending a letter to the FSLIC indicating that it "declin[ed] to acknowledge any coverage whatever" for the claims against the directors. The Court also found that FSLIC, succeeding to all the rights of the insured institution, had standing as "a person who [made] a contract for the benefit of a third party" enforcing that contract. Federal stands in virtually the identical position as the insurance company in *Oldenburg*, and as in *Oldenburg*, neither the nonoccurrence of the conditions precedent nor the insured organization's status as a promisee suing to enforce a contract made for the benefit of its directors and officers warrants dismissal of the action.

 The thrust of defendant's argument is that this Court is not presented with a ripe controversy. A claim for a declaratory judgment is justiciable if "the facts alleged ... show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The controversy must have matured beyond a mere contingency. *Public Serv. Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). The party invoking the jurisdiction of the court must show that he is "immediately in danger of sustaining some direct injury" which is not "conjectural or speculative." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1347 (2d Cir.1989), *cert. denied*, —— S.Ct. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). *See also Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1189 (7th Cir.1980), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (mere possibility that proceedings might be commenced against insured regarding act of insured as to which insurer might contest coverage did not present ripe controversy).

 Defendant contends that because Wedtech has not properly indemnified any officer and director, resolution of this case would turn on a mere contingency. Defendant suggests that Wedtech's resolution purportedly indemnifying General Cavazos was in fact an assignment of the insurance proceeds, not a "grant" of indemnification to a director as contemplated by the policies, because it limited the extent of indemnification to the coverage provided by the D & O policies. Transcript of Oral Argument ("Tr.") dated March 8, 1990 at 8. An assignment, however, is defined as "a transfer ... to another," while indemnifying is understood as "restor[ing] the victim of a loss, in whole or in part, by payment, repair or replacement." Black's Law Dictionary 109, 692 (5th ed. 1978). Since Wedtech was not entitled to payment under the policies in the first place, it cannot be said to have transferred

anything to Cavazos, but it can be said to have attempted to redress his loss at least in part.

Defendant also contends that the resolution was not "a good-faith indemnification" but rather "a sham." Tr. at 8–11. Although plaintiffs offer only an undated copy of the Board of Directors' resolution, the present director of Wedtech, Matthew Harrison, affirms that he and the other director of Wedtech may have signed an original copy of the resolution in 1988 but that that copy could not be located. Harrison Affidavit ¶ 5. Harrison also affirms that he and the other director signed this particular resolution sometime during 1989. There appears no basis for doubting the testimony of Harrison or for finding that the resolution is "a sham."

Finally, defendants could point out that the resolution does not comply with Wedtech's own by-laws. Article X, Section 1 of the by-laws provide that Wedtech:

> shall indemnify any person who was or is a party or is threatened to be made a party to any ... suit ... by reason of the fact that he is or was a director ... of [Wedtech] ... against expenses (including attorney's fees), judgments, fines and amounts held in settlement actually and reasonably incurred by him in connection with such action.

However, this Court's inquiry is limited to determining whether it is presented with a ripe controversy, and unless the indemnification resolution is found wholly void, its deficiency will not affect the justiciability of this case. While General Cavazos could argue that Wedtech's indemnification, limited as it is to the coverage provided by the D & O policy, does not fulfill the corporation's full obligation under its by-laws, Federal cannot reasonably contend that Wedtech's failure to meet its full obligation under Article X, Section 1 renders the entire indemnification void.

██ It is also apparent that a beneficiary of the policies would suffer an immediate and direct injury if the Court did not grant the relief plaintiffs seek. Where an insurance policy obligates the insurer to defend the insured, the insurer must defend the insured in every suit in which the complaint permits proof of facts establishing coverage until the insurer is able to exclude the possibility of any recovery for which it provided insurance. *American Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1499 (S.D.N.Y.1983), *aff'd in relevant part*, 748 F.2d 760, 763 (2d Cir.1984). Though the policy at issue does not impose an express duty to defend upon Federal, it does provide that Federal will pay on behalf of Wedtech "all loss" for which Wedtech grants indemnification to its directors, and "loss" is explicitly defined to include "defense costs." Courts have established that under such provisions, the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred. *Pepsico, Inc. v. Continental Casualty Co.*, 640 F.Supp. 656, 659–60 (S.D.N.Y.1986); *McGinniss v. Employers Reinsurance Corp.*, 648 F.Supp. 1263, 1271 (S.D.N.Y.1986); *Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 280 (9th Cir.1987); *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793–96 (3rd Cir.1987). *Contra Jones v. Southern Marine & Aviation Underwriters, Inc.*, 888 F.2d 358, 362–63 (5th Cir.1989); *Zaborac v. American Casualty Co. of Reading PA.*, 663 F.Supp. 330, 332–33 (D.Ill.1987). As a result, the declaration sought by plaintiffs would entitle General Cavazos to reimbursement for attorneys' fees as he incurs them unless or until Federal can exclude the possibility of any recovery for which it provided insurance. Federal of course retains the right to seek rescission against each and every director and officer of Wedtech.

Defendant argues that the relief sought by plaintiffs in this action would be inappropriate because it is the "flip side" of relief which Judge Blackshear "prevented" Federal from pursuing in the bankruptcy proceeding. Tr. at 20; Defendant's Reply Memorandum at 6. In the bankruptcy proceeding, however, Federal sought to secure a determination of the validity of its rescission of the policies as to all the insureds in a forum other than the Bankruptcy Court, and Judge Blackshear found instead that the Bankruptcy Court *would be* a proper forum to resolve the issue. Bank.

**222**

Tr. at 4, 10–12, 18–19. Federal was in no way precluded from litigating the issue and from seeking to rescind the policy as to each and every director or officer.

### Conclusion

For the reasons stated above, defendant's motion to dismiss or for a more definite statement is denied. Plaintiffs' motion for summary judgment is granted, and this opinion is to serve as a declaration that the policies are not void *ab initio* with respect to each and every director regardless of whether he participated in the alleged fraudulent inducement. We are of course not asked to decide and do not decide the question whether Federal has any valid defenses as to any particular director.

SO ORDERED.