John and Sharon **COURTNEY**,
Plaintiffs,

v.

**NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY**,
Defendant.

No. 1:99–CV–743(FJS/RWS).

United States District Court,
N.D. New York.

March 28, 2001.

Law Office of Livingston L. Hatch (Livingston L. Hatch, of counsel), Plattsburgh, NY, for Plaintiffs.

Hodgson, Russ, Andrews, Woods & Goodyear, LLP (Patrick M. Tomovic, Kevin D. Szczepanski, of counsel), Buffalo, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiffs commenced this action on April 9, 1999 by filing a complaint for breach of contract in the State Supreme Court for the County of Clinton. Defendant removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiffs contend that Defendant breached its insurance contract with Plaintiffs when it failed to pay for property loss they incurred when their residence was destroyed in a fire.

Presently before the Court are Defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Plaintiffs' cross-motion for summary judgment.

## II. BACKGROUND

Plaintiffs applied for and received a homeowner's insurance policy from Defendant for their residence in Plattsburgh, New York. On August 14, 1990, their residence was destroyed by a fire. Thereafter, Plaintiffs timely filed a claim with Defendant. Defendant conducted an investigation and, on September 22, 1998, informed Plaintiffs by letter that it was rescinding their insurance policy on the basis that Plaintiffs made material misrepresentations and omissions in their application for insurance.

The alleged misrepresentations and omissions related to two questions on the insurance application. One of these questions asked "has the insured or family member been sued, filed bankruptcy, had repossession / judgment within the last seven years?" An "N" was typed in the answer blank. The second relevant question asked about "past losses." The word "NONE" was typed in the answer blank next to this question.

During its investigation, Defendant learned that at least six judgments had been rendered against Plaintiffs in the seven years preceding the completion of the application. Additionally, Defendant learned of prior losses under two Allstate homeowners insurance policies within the three years preceding the completion of the application.

Mr. John Courtney signed the insurance application, which is dated August 3, 1994. The line directly above Mr. Courtney's signature states: "I hereby declare that the facts stated in the above application

are true and request the Company to issue the insurance and any renewals thereof in reliance thereon."

Plaintiffs contend that Mr. Courtney signed a blank application and did not provide the answers on the application. *See* Affidavit of John Courtney, sworn to Sept. 5, 2000 ("J. Courtney Aff."), at ¶ 7. Plaintiffs also contend that Mr. Courtney did not know that the form he was signing was an application. *See id.* at ¶ 14.

Michelle Rowell, of Rowell Insuring, prepared the application for the homeowners insurance policy at issue. *See* Affidavit of Michelle Rowell, sworn to Aug. 15, 2000 ("Rowell Aff."), at ¶ 1. Rowell claims that she prepared Plaintiffs' application based on information which Plaintiffs provided. *See id.* at ¶ 2.

## III. DISCUSSION

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted, including the pleadings, depositions, answers to interrogatories and affidavits, in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Raskin v. Wyatt Co.,* 125 F.3d 55, 60 (2d Cir.1997); *Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of fact exists when the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Rovtar v. Union Bank of Switz.,* 852 F.Supp. 180, 182 (S.D.N.Y.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)). Moreover, in determining whether such a fact question exists, the court must draw all reasonable inferences in favor of the non-moving party. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997).

### B. Defendant's Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment for the following reasons: (1) Plaintiffs misrepresented facts in their application for the Nationwide insurance policy; (2) Plaintiffs' misrepresentations were material, as a matter of settled New York law, to the risks which Plaintiffs sought to insure; and (3) Defendant relied upon these material misrepresentations in issuing the insurance contract and would not have issued the contract had it known that Plaintiffs' representations were false. Based on these factors, Defendant contends that it is entitled to an order rescinding the policy ab initio, or in the alternative, a judicial declaration that it has no duty to defend or indemnify Plaintiffs for past, present, or future claims and/or losses.

#### 1. Policy Recission

■ Under New York law, an insurance company may rescind a policy if (1) the applicant makes a misrepresentation in their insurance policy application; and (2) the company relies upon the misrepresentation and it is material to the company's determination on the application. *See Nationwide Mut. Fire Ins. Co. v. Pascarella,* 993 F.Supp. 134, 136 (N.D.N.Y.1998) (Scullin, J.) (citations omitted). The Court will first address the second prong of this analysis.

#### 2. "Materiality" and "Reliance"

The definition of a "material misrepresentation" is provided in § 3105(b) of the

New York Insurance Law, which provides that "[n]o misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." N.Y. Ins. Law § 3105(b) (McKinney 2000).

Although materiality is typically a question of fact for the jury, "[m]ateriality as a matter of law may be established on a summary judgment motion through the submissions of documentation such as the insurer's underwriting manual which pertains to insuring similar risks, and testimony of the insurer's underwriter or other qualified employee." *Pascarella*, 993 F.Supp. at 137; *see also Cohen v. Mutual Benefit Life Ins. Co.*, 638 F.Supp. 695, 697 (E.D.N.Y.1986) (citations omitted). The evidence submitted "must clearly show that the misrepresentation . . . induced an action which the insurer would not have otherwise taken." *Pascarella*, 993 F.Supp. at 137 (citations omitted).

Defendant contends that it would not have issued an insurance contract to Plaintiffs if they had truthfully disclosed the relevant facts. In support of this assertion, Defendant submitted the affidavit of James Wiginton, an underwriting specialist, and the Company's underwriting standards.[1] The affidavit and underwriting standards support Defendant's position that if Plaintiffs had truthfully disclosed information about the prior judgments rendered against them and their prior losses, Plaintiffs would have been denied insurance coverage. *See* Affidavit of

James Wiginton, sworn to Aug. 15, 2000 ("Wiginton Aff.") at ¶¶ 8, 9, 10. The affidavit and underwriting standards appear to be the same amount and type of evidence as that which was submitted in *Pascarella*. Based upon similar evidence, in *Pascarella*, 993 F.Supp. at 137, this Court found that the insurance company had sufficiently shown the presence of a "material misrepresentation" and thus rescinded the insurance policy at issue.

■ Based on the record before the Court and the applicable case law, it is clear that the application dated August 3, 1994 contains misrepresentations which were material and upon which Defendant relied.[2]

Accordingly, the Court finds that there are no genuine issues of material fact surrounding Defendant's claim that the alleged misrepresentations were "material" and that it relied upon these misrepresentations.

### 3. "Misrepresentations"

The only issue, in fact, is whether Plaintiff actually made the misrepresentations.

Plaintiffs oppose Defendant's motion for summary judgment, in part, on the basis that Mr. Courtney did not place the answers, or misrepresentations, on the application. Although Plaintiffs admit that some of the answers on the application are incorrect and that Mr. Courtney signed the application, they contend that Mr. Courtney merely signed a blank application and that the Rowell Agency added all

---

1. Defendant also points to the fact that in 1993, Allstate allegedly rejected Plaintiffs' application for homeowners insurance based on Plaintiffs' prior losses and credit history. *See* Affidavit of Patrick M. Tomovic, sworn to Aug. 16, 2000 ("Tomovic Aff."), at ¶ 30.

2. Plaintiffs do not contest the fact that the alleged misrepresentations were material or that they actually occurred.

of the misrepresentations.[3] *See* J. Courtney Aff., at ¶¶ 7, 14. According to Plaintiffs, when an insurance agent places false answers on an application, the insured may not be held liable for those false statements.

Most of the cases Plaintiffs cite are factually distinguishable from the present case.[4] To the extent that any of those cases may support Plaintiffs' position, they are contradicted by more recent cases, in which courts have found that an insured may be held responsible for misrepresentations contained within an insurance application regardless of the fact that an insurance agent completed the application which was signed by the insured. *See Nationwide Insurance Co. v. Dorch,* No. 94–CV–5842, slip op. at 5 (S.D.N.Y. Mar. 25, 1996) (unpublished); *see also Bloom v. Mutual of Omaha Ins. Co.,* 161 A.D.2d 1047, 1049, 557 N.Y.S.2d 614 (3d Dep't 1990) (court held that misrepresentations which were included in application for health insurance by the insurance agent after the insured allegedly provided the agent with accurate answers were nevertheless deemed to be adopted by the insured when they signed the application).

Moreover, an individual applying for insurance coverage has a duty to review the application and correct any incomplete or incorrect answers. *See Friedman v. Prudential Life Ins. Co. of Am.,* 589 F.Supp. 1017, 1023 (S.D.N.Y.1984) (citations omitted); *Zachary Trading Inc. v. Northwestern Mut. Life Ins. Co.,* 668 F.Supp. 343, 346 (S.D.N.Y.1987) (citations omitted).

In *Dorch,* No. 94–CV–5842, slip op. at 5, the plaintiff moved for summary judgment on its action for recission of an insurance contract on the basis that the insured made material misrepresentations in his insurance application. The insured claimed that he had provided truthful answers to the plaintiff's agent and then signed a blank application. *See id.* at 2. The insured further claimed that after he signed the blank application, the agent inserted the incorrect answers at issue. *See id.* The court held that "[u]nder New York law, the insured and the beneficiary are bound by the representations made in the application." *Id.* at 5 (citation omitted). "The insured has the duty to read the application, correct any incorrect or incomplete answers and is presumed to have done so, even if told by the agent it was unnecessary to read the application,

---

3. Plaintiffs also contend that Mr. Courtney signed the application without being told that it was actually an application and that he did not know the importance of the answers. *See* J. Courtney Aff. ¶¶ 7, 14. However, it is important to note that the paragraph directly above Mr. Courtney's signature states, as noted above, that "I hereby declare that the facts stated in the above application are true and request the Company to issue the insurance and any renewals thereof in reliance thereon."

Moreover, during his deposition, John Courtney was asked whether he "underst[ood] that in signing—putting [his] signature on the application [he was] declaring that the facts stated in the application were true" and he responded "[y]es." *See* Transcript of the Deposition of John Courtney, sworn to June 27, 2000 ("J. Courtney Dep."), attached to Tomovic Aff., Exh. H at 39–40.

4. To support their argument, Plaintiffs cite cases from the late nineteenth and early twentieth centuries. *See e.g. Hayes v. Saratoga & W. Fire Ins. Co.,* 81 A.D. 287, 80 N.Y.S. 888, 889 (3d Dep't 1903) (court found that insured, who was unable to read writing, could collect on insurance policy when insured gave truthful answers to agent but agent then inserted false answers into the application); *Bennett v. Agric. Ins. Co. of Watertown,* 106 N.Y. 243, 248–49, 12 N.E. 609 (1887) (court stated that if the insured provided correct answers to the agent, the agent then placed incorrect answers in the application, and the insured signed the application without noticing the misstatements, the insured was absolved from responsibility).

especially where, ..., the insured specifically represented that the answers on the application were true and the insurer could rely on them." *Id.* (citing *Metropolitan Life Ins. Co. v. Cohen*, 96 F.2d 66, 68–69 (2d Cir.1938) (other citation omitted)). Thus, the court held that the insured's claim that he signed a blank application and that the insurance agent placed answers contrary to those stated by the insured was irrelevant and created no genuine issue of material fact. *See id.* at 5–6.

■ Although Plaintiffs assert that Mr. Courtney signed a blank application and that they did not receive a copy of the application until after the fire occurred in 1998, *see* J. Courtney Aff. ¶ 14,[5] as the court stated in *Dorch*, No. 94–CV–5842, slip op. at 5, "under 'New York law, the insur[ance company] need not show that the misrepresentation was knowingly made since an innocent misrepresentation is sufficient to allow a recission of the contract.'" (quoting *Cohen v. Mutual Ben-*

*efit Life Ins. Co.*, 638 F.Supp. 695, 698 (E.D.N.Y.1986) (other citations omitted)). Accordingly, the Court finds that there is no genuine issue of material fact as to whether the application contained misrepresentations.

For the reasons set forth herein, the Court finds that Defendant is entitled to judgment as a matter of law and, therefore, Defendant's motion for summary judgment is granted.[6]

## C. Plaintiffs' Cross–Motion for Summary Judgment

Plaintiffs cross-move for summary judgment on the basis that "[t]he language of the policy of issuance gives [Mrs.] Courtney a status as a separate insured having her own rights and entitlements under the policy." *See* Pls' Mem. of Law at 5. Plaintiffs appear to be making a severability argument and in support of this argument they point to the fact that Mrs. Courtney

---

**5.** Defendant contends that the insurance application was prepared and then presented to Mr. Courtney for his review and signature. *See* Rowell Aff. at ¶ 5.

**6.** Plaintiffs attempt to create issues of fact within their own submissions to the Court by maintaining contradictory positions throughout their submissions. For example, Plaintiffs assert that Mr. Courtney purchased the property in April of 1993 and that he called the Rowell Agency during the same period of time. *See* J. Courtney Aff. at ¶ 5. Essentially, it appears that Plaintiffs are claiming that their coverage with Defendant began in 1993 as opposed to 1994. However, Plaintiffs provide no proof of such coverage beginning in 1993. Plaintiffs also acknowledge that it is Mr. Courtney's signature on the "paper called the application," but contend that they do not know why the application is dated August 3, 1994 because they had no "change in [their] insurance needs in August of 1994." *See id.* at ¶¶ 7, 8. However, Plaintiffs' position is somewhat unclear since they also assert that they "did not need an insurance policy from [Defendant] in August of 1994 because [they] had a policy with Royal Insurance Company

from April 27, 1993 to December 31, 1994." *See id.* at ¶ 13. Plaintiffs appear to argue that their coverage with Defendant began in 1993, but also assert that they were actually covered by Royal Insurance Company in portions of 1993 and 1994.

Additionally, Plaintiffs take another contradictory position by asserting that their coverage with Defendant began in 1998 and is unrelated to the 1994 application. *See id.* at ¶ 8. In 1998, Plaintiffs refinanced the property at issue. *See id.* Plaintiffs claim that at the time that this refinancing occurred, Defendant issued Plaintiffs a policy and Plaintiffs were not required to fill out an application for that policy. *See id.* This argument is problematic given the fact that the refinancing occurred in February 1998, *see id.* at ¶ 8; while the insurance policy was either "issued," as Plaintiffs argue, or renewed with an inception date of August 5, 1998. *See* Pls' Exh. 6. Moreover, Defendants have provided sufficient evidence to contradict this assertion. *See e.g.* Affidavit of David A. Scharoun, sworn to Aug. 15, 2000 ("Scharoun Aff."), at ¶ 2.

did not sign the 1994 application and is merely "an innocent co-insured."

■ Under New York law, an "innocent co-insured" is entitled to recover on a homeowners policy claim in very limited circumstances. In fact, this Court noted that the "doctrine is applicable only in a rare situation where (1) no material misrepresentation has been made in the application, and (2) one insured commits arson upon the premises without the other insured's knowledge." *Pascarella*, 993 F.Supp. at 138 n. 9 (citations omitted); *see also Krupp v. Aetna Life & Cas. Co.*, 103 A.D.2d 252, 260, 479 N.Y.S.2d 992 (2d Dep't 1984) (court held that in "the absence of explicit language in the homeowners' policy excluding coverage and precluding recovery, an innocent co[-]insured spouse cannot be foreclosed from recovery where insured property held as tenants by the entirety is damaged as a result of the incendiary acts of the other spouse; ...."). Courts have also utilized a concept similar to that of an innocent co-insured in some other limited circumstances such as those at issue in the cases Plaintiffs cite.[7] However, in those cases, the wrongdoings of one insured were not attributed to the other insured who was otherwise entitled to coverage under the insurance contract. *See e.g. Reed v. Federal Ins. Co.*, 71 N.Y.2d 581, 588–89, 528 N.Y.S.2d 355, 523 N.E.2d 480 (1988) (court held that innocent coinsured was allowed to recover under an insurance contract, despite the wrongdoing of the other insured); *Meade v. North Country Co–Operative Ins. Co.*, 120 A.D.2d 834, 835–36, 501 N.Y.S.2d 944 (3d Dep't 1986) (court found that the insured's misrepresentations made when procuring policy did not affect mortgagee's entitlement to coverage where the mortgagee's property interest was accurately provided in application and, thus, mortgagee was otherwise entitled to coverage under the insurance contract).[8]

■ As discussed by Defendant, Mrs. Courtney may not be deemed to be an insured individual who was 'otherwise entitled to coverage' because Mrs. Courtney did not qualify for insurance coverage under Defendant's guidelines. It is undisputed that at least two judgments were entered against both Mr. and Mrs. Courtney in the seven-year period preceding the application date. *See* Affidavit of David

---

7. In support of their severability theory, Plaintiffs also submitted a document which appears to be a portion of the insurance contract, which states that "[t]he insurance applies separately to each insured. This condition does not increase our limit of liability for one occurrence." *See* Pls' Exh. 12 at J1.

8. Plaintiffs cite *Wedtech Corp. v. Federal Ins. Co.*, 740 F.Supp. 214 (S.D.N.Y.1990), in support of their argument that Mrs. Courtney is an "innocent co-insured." However, *Wedtech Corp.* is also distinguishable from the present case.

In *Wedtech Corp.*, the court found that directors listed as insureds under the plaintiff's liability insurance contract were entitled to coverage, regardless of the fact that some of the directors made material misrepresenta-

tions when applying for the insurance coverage. The court noted that an insurance policy may be found void ab initio and recission may be appropriate when a policy is obtained through material misrepresentations, even when other officers and directors do not have knowledge of the fraud. However, the insurance application at issue contained a provision which provided that "no statement in the application or knowledge on the part of one insured is to be imputed to another insured in determining the availability of coverage." *Id.* at 219. The provision also indicated that "the written application for coverage is to be construed as a separate application by each insured." *Id.*

The application at issue in the present case does not include a similar severability provision.

Sharoun, sworn to Aug. 15, 2000 ("Sharoun Aff."), at ¶ 5.[9]

Based on the submissions before the Court, it is clear that Mrs. Courtney would have also been prohibited from receiving an insurance policy. *See* Wiginton Aff. at ¶ 8 ("Defendant's underwriting requirements would have prohibited any [of its] underwriter[s] from issuing the Nationwide Insurance Contract where, as here, the proposed insureds (*i.e.,* the plaintiffs) have *any* judgments within the seven-year period prior to the application date."); *see also* Affidavit of Marvin A. Metter, sworn to Oct. 25, 2000 ("Metter Aff."), at ¶ 3.

Finally, Plaintiffs contend that since Mrs. Courtney only obtained an interest in the property in 1998, when a new policy was allegedly issued, she is not bound by the 1994 application even though her name was listed on the application.[10] *See* S. Courtney Aff., at ¶ 9. The Court finds this argument to be unpersuasive. There is no evidence that there was a new policy issued in 1998; rather, the record makes clear that there was a renewal. Furthermore, even if the Court were to consider only those judgments rendered against Mrs. Courtney within seven years of the 1998 renewal, or as Plaintiffs argue, new policy, Mrs. Courtney would still be precluded from receiving coverage because a judgment was rendered against her in December 1993. *See* Sharoun Aff., Exh. A.

Given the extremely limited application of the innocent co-insured doctrine, the Court finds that it is inapplicable to the present case. Accordingly, the Court denies Plaintiffs' cross-motion for summary judgment.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the submissions of the parties and the applicable law and for the reasons stated herein, it is hereby

**ORDERED** that Defendant's motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' cross-motion for summary judgment is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court enter **JUDGMENT** in favor of Defendant and close this case.

**IT IS SO ORDERED**.

---

9. Plaintiffs do not dispute Defendant's claim that some of the judgments were also rendered against Mrs. Courtney. Rather, Plaintiffs assert that Mrs. Courtney has a "good" background and that there is no reason to believe that she would not tell the truth in an insurance application. *See* Affidavit of Sharon Courtney, sworn to November 14, 2000 ("S. Courtney Aff."), at ¶ 2.

Defendant also contends that Mr. and Mrs. Courtney had at least two prior losses under two insurance policies within the three-year period preceding the application date. *See* Sharoun Aff. at ¶ 6.

10. Mrs. Courtney was not originally listed on the deed when the property was purchased in 1993. Ms. Courtney only obtained an interest in the property in February 1998. *See* Pls' Exh. 5. It should be noted that although Mrs. Courtney did not sign the 1994 application, her name was listed on the application under the heading "insured name and address."