# Gottsman, Administrator, *versus* The Pennsylvania Insurance Company.

1. An assured applied for insurance in the sum of "$2000, at 1½ per cent. premium, $30," on property specified, viz.: $500 on barn and stable, and $1500 on personal property in another building, and answered to interrogatories that the lot on which all the buildings were, was encumbered to $3000, agreeing that an untrue answer should make the policy void. The policy also provided that a failure to disclose encumbrances should render the policy void. The encumbrances on the realty were more than were disclosed. *Held,* that the contract was entire and not separable, and that the policy was void as to the personalty, which was burned, as well as to the realty.

2. If the consideration to be paid be single and entire, the contract must be held to be entire, although its subject may be several and independent items.

November 7th 1867. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Error to the District Court of *Allegheny county* : No. 83, to October and November Term 1865.

This was an action of covenant on a policy of insurance, brought May 2d 1861, by Anna Gottsman against The Pennsylvania Insurance Company, to recover for a loss by fire on property

comprised in the policy. Mrs. Gottsman died after the bringing of the suit, and John P. Robister her administrator was substituted as plaintiff. There was a verdict for the plaintiff, March 16th 1863, for $1698.75, the judgment on which was reversed by the Supreme Court (12 Wright 151).

The application was for insurance against loss by fire for one year, from June 20th 1860, " in the sum of $2000, on the property below specified, the value being estimated by the applicant."

" On her frame barn and stable near bank of Allegheny river, &c., $500.

" On hotel furniture, &c., contained in a brick and frame building, occupied as a hotel, about 60 feet east of above barn, $1000.

" On liquors and bar fixtures in said hotel, $500.—Total $2000, at 1½ premium, $30."

Various interrogatories were put on the application, the answers to which " are given as warranty on the part of the insured."

One of the interrogatories was :—

" Is (the property) encumbered ? If so, to what amount ?" To which the answer was: " $3000, on 10 acres of ground worth $10,000."

The applicant further agreed, that " If any untrue answer has been given to the foregoing interrogatories, * * * then the policy (to be issued) to be void and of no effect."

One of the conditions of the policy was, that if any person obtaining insurance shall make any untrue representations, or neglect to disclose the nature and amount of all encumbrances, or cause the same to be described in the policy otherwise than they really are, the insurance shall be void: also, should an encumbrance be executed during the life of the policy, on the insured property, or should it be levied on or taken into possession under an execution, &c., and the assured shall neglect or fail to obtain the consent of the company thereto, the policy should be void.

At the time the insurance was effected, there were encumbrances on the real estate to a very large amount beyond that stated in the answer of the applicant, and shortly afterwards other judgments were recovered against her which were not reported to the company.

The hotel was destroyed by fire on the 28th of September 1860, together with the principal part of the furniture, liquors, bar-fixtures, &c., therein : the barn and stable were not burned.

The court charged, that by the express provisions of the policy it was void as to the real estate, and that if the contract were an entirety it was void also as to the personal property insured ; but further charged pro formâ, that the contract of insurance was not an entirety, but divisible, and although void as to the realty,

was not void as to the personalty, and reserved for the consideration of the court in banc, the question whether the contract of insurance was an entirety, and, if so, whether the neglect of the assured to disclose all the encumbrances on the realty rendered the contract void as to both the realty and personalty ; or whether the contract is divisible and valid as to the personal property, although void as to the realty.

A verdict was rendered for the plaintiff for $1850, subject to the opinion of the court on the question of law reserved.

The court in banc, on the 12th of August 1865, entered judgment for the defendant notwithstanding the verdict, Williams, A. J., delivering the opinion.

The plaintiff took a writ of error. The error assigned was entering judgment for the defendant on the reserved question.

*J. Barton* and *R. Woods*, for plaintiff in error, cited 7 Hill 122 ; Smith *v.* Empire Insurance Co., 25 Barb. 497.

*Hopkins*, for defendant in error, cited 2 Parsons on Contracts 31 ; Friesmuth *v.* Agawam Insurance Co., 10 Cush. 590 ; Brown *v.* People's Mutual Insurance Co., 11 Id. 280 ; Kimball *v.* Howard Insurance Co., 8 Gray 38 ; Lee *v.* Howard Insurance Co., 3 Id. 353 ; Lovejoy *v.* Augusta Insurance Co., 44 Maine 472 ; Richardson *v.* Marine Insurance Co., 46 Id. 394 ; Firemen's Insurance Co. *v.* Assurer, 5 Md. 165 ; Fire Association *v.* Williamson, 2 Casey 198 ; De Beerski *v.* Paige, 47 Barb. ; 6 Am. Law Reg. N. S. 564 ; Smith *v.* Empire Insurance Co., *supra.*

The opinion of the court was delivered, January 7th 1868, by
THOMPSON, C. J.—When this case was in this court before, 12 Wright 151, the only questions definitively settled were, whether certain answers to interrogatories by the applicant, Mrs. Gottsman, for insurance, were under the terms of the policy to be regarded as warranties, and not merely representations; and, *secondly*, as to the duty of the insured in regard to giving notice to the company of the levy on the goods and furniture insured. The conclusions the court arrived at on these points, reversed the case ; and although there are some remarks in the opinion of the Chief Justice, which seem to extend to other points, yet nothing else was within the final resolution of the court. The question, therefore, now presented, whether the contract of insurance entered into between Mrs. Gottsman and the company is entire, a unit, or separable, is still open for consideration.

The application of Mrs. Gottsman seems to look to an aggregate, or entire contract of insurance, and not several or separate, although the subjects were several. Her application was " for insurance against loss or damage by fire," * * * " in the sum

of $2000, on the property below specified; the value being esti-
mated by the applicant." Then follows a statement of the pro-
perty and description, both real and personal, with an apportion-
ment of the gross sum of $2000 among them, and then these
words at the end: "Total, $2000, at 1½ premium, $30."
Then follow the company's interrogatories, and the applicant's
answers, with the stipulation at the end, that "if any untrue an-
swers have been given to the foregoing interrogatories * * * * *
then said policy of insurance to be void and of no effect." There
is nothing like a qualification of this last clause discoverable in
the policy, and the question is, do the terms of the policy, which
must be taken to express the intention or assent of the parties, in
the absence of other evidence, qualify or limit it to anything
short of the entire policy, in case of untrue answers given?
That the answer in regard to the encumbrances on the real estate
was untrue is incontrovertible. The answer to the inquiry
whether it was encumbered, and to what amount, was "$3000 on
10 acres of ground, worth $10,000," while at the same time the
encumbrances exceeded $8000, and after Mrs. Gottsman's death
the property sold for but little over half the estimated value.

That this contract of insurance was entire, and not separable,
seems to result from a consideration of its frame, even without
the aid of authorities; but, aided by them, and a few familiar
elementary principles, no other result can be arrived at. Indeed,
any repugnance to such a conclusion, results rather from what we
feel ought to have been the form of the contract, than what, without
any allegation of fraud, it was. It is not quite agreeable to our
ideas of abstract justice, to be obliged to admit that an untrue
answer in regard to encumbrances on the real estate, which was
not in the least affected or deteriorated by the fire, should have
the effect to deprive the insured of compensation for that about
which there was no untruth, as the jury have found, and which
was entirely destroyed. In the absence of this contract, this
would look unreasonable. But we must not forget the contract.
The parties were legally competent to make it; and there is not
a word to show that they were not fully competent otherwise.
We cannot set aside or alter their contract, and they have chosen
to agree, that for any "untrue representations, or neglect to dis-
close the nature and amount of all encumbrances, in case any
exist thereon, whether of bonds, judgments, mortgages or liens
of any description, or to cause the same to be described in the
policy, otherwise than they really are, the insurance shall be void
and of no effect." These were terms the insurers thought mate-
rial to their security, and upon which it must be supposed they
insisted, and without which they would probably not have taken
the risk. It would be a fraud upon them to hold them bound
with this in effect expunged. That the stipulation applies to the

entire policy is plain, and if it falls, of course all liability goes with it. That it was so intended we must believe, for it is part of the contract, inserted, as said above, without fraud or deceit, so far as we are informed, or is complained of.

The amount of the risk was applied for in gross, but apportioned to suit the wishes of the insured, and the charge is in gross, estimated, it is true, by the rate per cent. The consideration is entire and indivisible. This is evident, and of this state of facts Parsons on Contracts, vol. 2, p. 31, speaks: " if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items."

That this rule is applicable to contracts of insurance, is shown by many cases. Friesmuth *v.* Agawam Insurance Co., 10 Cush. 590, was a case where there was an insurance in one policy of $800 on stock, $250 on tools, and $250 on the shop. The assured represented the property as unencumbered ; whereas there was a mortgage on the land, and another on the tools. It was claimed on part of the plaintiff, that he was entitled to recover the amount insured on the stock at least, because the subjects embraced in the policy were separately valued, and a distinct sum taken on each, and there was no misrepresentation as to encumbrances on the stock. But the court held, that this was a mistaken view of the contract ; that " the contract of insurance on the part of the defendant, was not distinct and separate on each class or subjects embraced in the policy. It was separate and distinct, only so far as to limit the extent of the risk assumed by defendants upon each kind of property."

So in Brown *v.* People's Mutual Insurance Co., 11 Cush. 280 ; there, $600 was taken on movable machinery, and $500 on the factory. It was represented that the encumbrances were " about $4000, mortgage to C. T. James," when in fact there was a mortgage of $3600 to James, and another of $1100 to one Perkins. It was held, that although the machinery was not encumbered, yet the contract was entire, and the plaintiff could not recover.

The same principle was applied in Kimball *v.* Howard, 8 Gray 38, where for a single premium several sums were insured on stock and on fixtures. A subsequent insurance without notice to the first insurer was effected on the stock, in violation of the stipulations of the policy ; it was there held that the policy was avoided both as to the stock and fixtures. The court say, " The contract is, that if the assured fail to give the notice required, the policy shall cease and be of no further effect. The entire contract was therefore terminated."

In Lee *v.* The Howard Insurance Co., 3 Gray 583, there was a policy upon two separate buildings. Part of one of them was used for a purpose deemed extra hazardous without the consent

[*Gottsman v. Pennsylvania Insurance Co.*]

of the company, in violation of the terms of the policy. It was there decided, that " the policy cannot be held valid for a portion of the risk, and invalid for the residue. It was an entire contract, entered into for an entire consideration. It is impossible to say, that either portion of the risk would have been taken without the other. Besides, it is expressly agreed, that in case of a breach of the stipulation, as to the use of the premises for purposes not specified, *these presents shall cease and be of no force or effect.* The contract was therefore, by its terms, at an end."

The same in principle is Lovejoy *v.* The Augusta Insurance Co., 44 Maine 472 ; Richardson *v.* The Marine Insurance Co., 46 Id. 394 ; and our case of The Fire Association *v.* Williamson, 2 Casey 196. There three distinct, but adjoining tenements, were covered by the same policy, to the extent of $666.66⅔ on each, so expressed in the policy. The premium was single for the whole. One of them was changed from a millinery to a grocery store, in which there happened to be a keg of gunpowder. That building took fire, and an explosion ensued which injured and communicated fire to the other buildings. The insured, who was the landlord, had no knowledge of the powder being kept in the grocery. It was held that the contract was single and entire, and that no recovery could be had for the injury by fire to the other two houses, although in no way implicated in violating the terms of the policy. See also on the point of entirety of contracts De Beerski *v.* Paige, 47 Barb. ; 6 Am. Law Reg. N. S. 564.

These authorities, we think, sufficiently rule the case with the defendant, and that the judgment of the court below on the reserved question was well entered.

Judgment affirmed.