**John Basil BIRD et al., Plaintiffs,**

**v.**

**The PENN CENTRAL COMPANY et al., Defendants.**

**Civ. A. No. 71–358.**

United States District Court, E. D. Pennsylvania.

April 21, 1972.

**292**

James J. Binns, Philadelphia, Pa., E. Barrett Prettyman, Jr., Stuart Philip Ross, Washington, D. C., Robert G. Schloerb, Chicago, Ill., for plaintiffs.

Henry T. Reath, Philadelphia, Pa., for defendants Ferdinand L. Kattau and William F. Kirk.

David P. Bruton, Lewis H. Van Dusen, Jr., Philadelphia, Pa., for defendant Walter H. Annenberg.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is a diversity case governed by Pennsylvania law. Plaintiffs in this action are certain named underwriters trading under the name of Lloyds of London. On July 2, 1968 they issued what we construe as two separate policies[1] providing coverage for the defendants. The Directors and Officers Liability policy (hereinafter referred to as D & O policy) provides coverage for the individual defendants, all present or past officers and/or directors of the Penn Central Company. The Company Reimbursement policy provides coverage for the defendant Penn Central Company.

There was one application[2] completed to obtain both policies. This application, which was specifically incorporated as part of the policies, was executed by defendant David C. Bevan, Chairman of the Finance Committee of the defendant corporation. It is alleged by the plaintiffs that defendant Bevan's response to Item 10 of the application was falsely made in bad faith, was material to the risk, and was justifiably relied on so as to entitle them to rescind the policy because of fraud.

Three of the defendants, Kattau, Kirk and Annenberg, moved for summary judgment under F.R.Civ.P. 56, advancing many arguments. We rejected those arguments in an opinion filed on November 15, 1971 (334 F.Supp. 255) and denied summary judgment. In that opinion, among other things, we said that if the contract of insurance was a unitary one, with Lloyds of London and Penn Central Company the only contracting parties, the officers and directors would all be in the position of third-party beneficiaries, their rights rising no higher than those of their contracting party, Penn Central. Under this construction of the contract of insurance, if defendant Bevan's response on the application was proven fraudulent, this fraud would be imputed to his principal, Penn Central Company, regardless of the innocence of movants or other officers and directors. Gordon v. Continental Casualty Company, 319 Pa. 555, 181 A. 574 (1935); Williams v. Paxson Coal Company, 346 Pa. 468, 31 A.2d 69 (1943); Zimnisky v. Zimnisky, 210 Pa.Super. 266, 231 A.2d 904 (1967).

We said that another construction of the "policy" would consider each officer and director assured as a contracting party rather than a third-party beneficiary. We did not resolve this question of the construction of the "policy" because we said that the result would be the same in any event—if there was a material fraud in the application, and the other elements of rescission were present, the entire "policy" could be rescinded.

---

1. The plaintiffs contend that they issued one policy in two forms, but as more fully explained later, we have concluded that the two "forms" are two different policies with separate obligations.

2. This application was entitled "Proposal for Directors and Officers Liability and Company Reimbursement Insurance."

Having some doubts about whether our conclusion was correct if we considered the proper construction of the "policy" to be that the individual officers and directors are contracting parties, we granted reargument limited to the following questions:

(a) Was the contract of insurance a unitary contract with Penn Central as the other contracting party, or a series of individual contracts with each officer and director; (b) if the latter, is the knowledge of Bevan imputed to each individual officer and director?

Plaintiffs contend that the D & O insurance and the Company Reimbursement insurance are two forms of one policy, with Penn Central being the only contracting party. They point out there was but one application, and that a single lump sum premium was paid by the Penn Central Company. They rely on two old Pennsylvania Supreme Court cases for the proposition that an insurance policy is entire and indivisible when but one premium is paid. Kelly v. Humboldt Fire Ins. Co., Sup., 6 A. 740 (1886); Gottsman v. Pennsylvania Ins. Co., 56 Pa. 210 (1868). However, both of these cases involved policies issued for the protection of a single insured, unlike the situation presented here. Furthermore, a much more recent decision indicates that the payment of a single premium is no longer to be deemed determinative of whether an insurance contract is entire or severable. Downing v. Erie City School District, 360 Pa. 29, 61 A.2d 133 (1948). Downing points to a more flexible approach which depends upon the manifest intent of the parties as expressed in the body of the instrument, as well as other circumstances attending the issuance of the insurance.

■ We have concluded that the Lloyds insurance package consists of two separate parts: a Company Reimbursement policy, which is a contract between Lloyds and Penn Central, and a D & O policy which is a contract between Lloyds and the directors and officers, insuring severally the distinct insurable interest of each officer and director.

A comparison of the opening sentence of both forms commands this construction:

*Company Reimbursement Insurance*

"In consideration of the payment of the premium and subject to all the terms of this policy, Underwriters agree with the Company (named in Item I of the Declarations) as follows:"

*D & O Insurance*

"In consideration of the payment of the premium and subject to all the terms of this policy, Underwriters agree with the Directors and Officers (named in Item I of the Declarations) as follows:"

We conclude that the Company Reimbursement insurance was a separate policy intended to protect the company's interest in the event it indemnified its officers and directors for personal liability. The D & O insurance has for its purpose the protection of the individual officer or director from personal liability, and each officer and director is a separate promisee under this policy. In addition to the preamble referred to above, various other provisions of the D & O policy lead us to this interpretation. For example, "assureds" under the D & O policy are defined in Section 4 (a) as "all persons who were, now are, or shall be duly elected Directors or Officers of the Company. * * *" The Penn Central Company is nowhere referred to as an assured, while the Company Reimbursement policy refers throughout to the rights of the company. The individual nature of the protection under the D & O policy is demonstrated by Section 1 which provides that "the Underwriters will pay on behalf of the assureds or *any of them*" 95% of any claim covered by the policy. (Emphasis added.)

■ It is clear that if valid, when a policy such as the D & O one under consideration insures severally the distinct interests of many people, the act of one insured after issuance in breach of any condition of the policy could result in a forfeiture of only his own rights under

the policy. The rights of other insureds to recover under the policy are unaffected, regardless of whether the breach involved fraud or not. *E. g.,* Esmond v. Liscio, 209 Pa.Super. 200, 224 A.2d 793 (1966) (dictum); Mercantile Trust Co. v. New York Underwriters Ins. Co., 376 F.2d 502 (C.A. 7, 1967); Western Casualty & Surety Co. v. Aponaug Mfg. Co., 197 F.2d 673 (C.A. 5, 1952); Arenson v. National Automobile & Casualty Ins. Co., 45 Cal.2d 81, 286 P.2d 816 (1955); Morgan v. Greater New York Taxpayers Mut. Ins. Assn., 305 N.Y. 243, 112 N.E.2d 273 (1953).

The question in this case, however, does not concern the effect of one insured's breach of a condition on the rights of another insured under a valid policy, but whether the entire policy is voidable because of an alleged fraudulent act committed in the procurement of the policy.

Item 10 of the application which was the basis for both the Company Reimbursement policy and the D & O policy provides as follows:

> "No person proposed for this insurance is cognizant of any act, error, or omission which he has reason to suppose might afford valid grounds for any future claim such as would fall within the scope of the proposed insurance except as follows:"

Defendant Bevan's response to this, which is alleged to have been knowingly false, and which is the basis for this rescission action, was "None known." Defendant Bevan, himself, was one of the assureds under the D & O policy. Movants argue that since the answer called for a subjective response, defendant Bevan's answer, if a misrepresentation was made, was a misrepresentation only of his own state of knowledge, but was a true response in his capacity as agent for each individual officer and director (such as movants) who would have truthfully responded "None known" to Item 10.

It is contended that defendant Bevan was acting in three capacities in signing the application: (a) as agent for Penn Central,[3] (b) as principal for his own account as one of the assureds, and (c) as agent for each of the other individual assureds. Recognizing these various capacities, movants in effect then ask us to consider defendant Bevan's single response to Item 10 as being over sixty separate responses, his own plus one representing the knowledge of each officer and director. *See* Bobrow v. United States Casualty Co., 231 App.Div. 91, 246 N.Y.S. 363 (Sup.Ct.1930). Thus, it is urged that plaintiffs should be able to rescind the D & O policy only as to defendant Bevan, for if he answered Item 10 fraudulently it was only in his capacity as principal for his own account. If it was held that the entire D & O policy could be subject to rescission because defendant Bevan happened to be the officer who signed the insurance application, it would be manifestly unfair to the directors and officers who are completely blameless, such as movants.

While we sympathize with movants' position, and recognize that innocent officers and directors are likely to suffer if the entire policy is voidable because of one man's fraudulent response, it must be recognized that plaintiff insurers are likewise innocent parties. Defendant Bevan was not plaintiffs' agent. Movants do not deny that he was their agent in completing the application by which the policy was obtained.

■■  The general rule in this type of situation was stated by the Pennsylvania Supreme Court over 100 years ago.

> "Where the agent of the insured, in effecting an insurance, makes a false and unauthorized representation, the policy is void. Where one of two innocent persons must suffer by the fraud or negligence of a third, whichever of the two has accredited him, ought to bear the loss  *  *  *."

---

3. In consideration of this motion, we are unconcerned with his actions as agent for Penn Central since movants are individual assureds seeking summary judgment only as to their rights as individuals under the D & O policy.

Mundorff v. Wickersham, 63 Pa. 87, 89 (1870) (dictum).

That the fraud of the agent in inducing a contract is binding on an innocent principal is a well established doctrine of agency law in other jurisdictions as well.[4] *E. g.*, Parker Precision Products Co. v. Metropolitan Life Ins. Co., 407 F.2d 1070 (C.A. 3, 1969) (interpretation of New Jersey law); Prudential Insurance Co. v. Anaya, 78 N.M. 101, 428 P.2d 640 (1967); Post v. Maryland Casualty Co., 2 Wash.2d 21, 97 P.2d 173 (1939); Restatement, Law of Agency, 2d sec. 272.

The leading case in Pennsylvania is Gordon v. Continental Casualty Company, 319 Pa. 555, 181 A. 574 (1935). There a trust company obtained a banker's blanket bond to insure it against any loss due to the dishonesty of its officers and employees. The application which was signed by its secretary and treasurer, Ralph E. Mathews, represented that no losses had been sustained by it during the preceding five years because of employee dishonesty, and that the company had no notice or knowledge of any facts indicating that any of the officers were dishonest or unworthy of confidence. Mathews at that very time, without the trust company's knowledge, was an embezzler of the company's funds to the tune of $26,000, and was of course aware of his own misconduct. The court held that the innocent trust company could not recover on the bond because it was bound by Mathews' misrepresentations. Stated another way, recovery was barred because the knowledge of Mathews' own misdeeds was imputed to the company.

■ Movants wish to limit the Gordon decision strictly to its facts, arguing that the fact that a corporation is an artificial entity and can "know" only through its agents is the reason that the trust com-

pany there was bound by the fraudulent knowledge of its agent who completed the insurance application. We do not, however, read the crucial fact in Gordon to be that the principal was a corporation, rather than an individual or a group of individuals. It is rather an application of the usual rule that a principal is bound by the fraud of his agent in procuring a contract.

"Where a principal sends forth his agent to conduct his affairs and contract for his benefit and the agent procures a contract by fraudulent or corrupt practices, although the principal may not have been privy in any way to such conduct of his agent, yet by claiming the benefits of the contract he must take it tainted as it may be by such practice." Gordon, *supra,* 319 Pa. at 566, 181 A. at 578, quoting Thompson on Corporations, volume 3, section 1769.

■ We do not think that the fact that defendant Bevan signed the application on behalf of numerous principals including himself alters the force of this rule.[5] It would be extremely artificial to read defendant Bevan's response to Item 10 as being multiple separate responses on behalf of himself, the company, and each of the individual assureds under the D & O policy. No matter how the policies for Company Reimbursement insurance and D & O insurance are characterized, the simple inescapable fact is that both policies were issued on the basis of a single application, and only one response was made to Item 10 of that application. Defendant Bevan, movants' agent, made that response. As we said in our previous opinion, we construe Item 10 as being directed at gaining information regarding the nature and scope of the insured risk. If the answer to Item 10 is

4. Cases holding otherwise because of a provision in the contract such as a standard mortgagee clause are inapposite to the present situation where no such cause is present in the D & O policy. *E. g.*, Syndicate Ins. Co. v. Bohn, 65 F. 165 (C.A. 8, 1894); Goldstein v. National Liberty Ins. Co. of America, 256 N.Y. 26, 175 N.E. 359 (1931).

5. To the extent that Bobrow v. United States Casualty Company, 231 App.Div. 91, 246 N.Y.S. 363 (Sup.Ct.1930), might differ from this conclusion, we decline to follow it as we do not find it to be the law of Pennsylvania.

fraudulent, we cannot say with assurance that plaintiffs would not have acted differently before issuing the policies if they had been given a truthful response, either issuing the policies only if a higher premium were paid, or refusing to issue any policy at all.

Therefore, the motions for summary judgment will be denied.