**In the Matter of JASMINE, LTD., Debtor.**

**Aetna Casualty & Surety Co., Plaintiff,**

**v.**

**Jasmine, Ltd., et al., Defendants.**

**Bankruptcy No. 96–101129.**
**Adversary No. 97–1132.**
**Civ.A. No. 97–3780(JHR).**

United States District Court,
D. New Jersey.

June 19, 2000.

Michael Kevin Mullen, Schenck, Price, Smith & King, Morristown, NJ, for plaintiff.

Richard A. Roth, Littman, Krooks, Roth & Ball, P.C., New Yok City, Jonathan L. Goldstein, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for defendants.

RODRIGUEZ, District Judge.

This matter having come before the Court pursuant to Rule 72(b) of the Federal Rules of Civil Procedure; and

It appearing that on December 15, 1999, United States Magistrate Judge Robert B. Kugler filed a Report and Recommendation in the above-captioned adversary proceeding recommending that the settlement proposed by the bankruptcy trustee be approved; and

The Court having reviewed the Report and Recommendation as well as the transcript of the November 12, 1999 hearing, the briefs and supplemental briefs filed in connection with the motion to approve a settlement of the controversy and the Written Objections to the Report and Recommendation filed by Irving Mangel and Samuel Mangel and Summit Bank, and the Responses thereto filed by the trustee and Aetna Casualty & Surety Company;

The Court finding that it should adopt the Report and Recommendation without modification;

IT IS ORDERED on this 19th day of June, 2000 that the Report and Recom-

mendation filed on December 15, 1999 is hereby *ADOPTED* and *ENTERED*.

Dec. 15, 1999

Order Denying Reconsideration of Report and Recommendation Jan. 6, 2000

### *REPORT and RECOMMENDATION*

KUGLER, United States Magistrate Judge:

This matter is before the Court on the motion of the bankruptcy trustee, James J. Cain, to approve a settlement between the debtor, Jasmine, Ltd., and Travelers Casualty and Surety Company, f/k/a Aetna Casualty and Surety Company [hereinafter referred to as "Aetna"], in Aetna's adversary proceeding. Both the trustee and Aetna submitted briefs in support of the trustee's motion. Briefs in opposition to the motion were filed by the following directors and officers of Jasmine: (1) Irving Mangel and Samuel Mangel; (2) Edward Maskaly; (3) Steven B. Sands, Lloyd Saunders, III, and Sherman Henderson, Ltd.; and (4) Thomas Ciocco. A Jasmine creditor, Summit Bancorp, f/k/a United Jersey Bank, also submitted a brief in opposition to the motion. This Court held a hearing on the motion on November 12, 1999, and the parties submitted supplemental legal briefs on or about November 30, 1999.

For the reasons stated below, and because the proposed settlement represents the maximum value that the estate can realize, it is my recommendation pursuant to 28 U.S.C. § 636(b)(1)(C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72.1(c)(2) of the Local Civil Rules of the United States District Court for the District of New Jersey, that the settlement proposed by the trustee be **APPROVED**.

### I. *FINDINGS OF FACT*

1. Aetna issued a "claims-made" Designated Insured Persons and Company Reimbursement Policy, commonly known as a directors' and officers' liability insurance policy [hereinafter referred to as "the D & O Policy"], to Jasmine, Ltd. for the policy period from December 15, 1994, to December 15, 1995. (*See* D & O Policy No. 095 LB 100 849 117 BCA, attached as Ex. "A" to Brief of Trustee James J. Cain). The D & O Policy, like most standard D & O policies, offered two types of insurance coverage: (1) reimbursement to Jasmine of amounts (in excess of the $100,000 deductible) that Jasmine indemnified its officers and directors for losses resulting from any claims against them during the policy period for wrongful acts, as that term is defined by the Policy; and (2) reimbursement directly to the officers and directors for losses incurred as a result of any claims made against them during the policy period for wrongful acts. Jasmine paid the $110,000 annual premium. The Policy had a limit of liability of $2 million.

2. An application for the Policy, which was actually a renewal application, was dated October 31, 1994, and appears to be signed by Sam Mangel, an officer and director of Jasmine, Ltd., although that fact was not confirmed by any party. (*See* Policy Renewal Application, attached as Ex. "B" to Brief of Trustee James J. Cain). The Policy Renewal Application contained the following provision which obligated Jasmine to notify Aetna of any material changes in the information supplied on the Policy application from the date of the application through the effective date of the Policy:

IT IS AGREED THAT IN THE EVENT THERE IS A MATERIAL CHANGE IN THE ANSWERS TO THE QUESTIONS CONTAINED HEREIN PRIOR TO THE EFFECTIVE DATE OF THE POLICY, THE APPLICANT WILL NOTIFY THE UNDERWRITER AND, AT THE SOLE DISCRETION OF THE UNDERWRITER, ANY OUTSTANDING QUOTATIONS MAY BE MODIFIED OR WITHDRAWN.

(Policy Renewal Application, at 5, Ex. "B," Brief of Trustee James Cain).

3. On or about November 21, 1994, Jasmine was served with a complaint seeking $14 million in damages by McKowan Lowe & Co., Ltd., its former Hong Kong agent. That complaint was docketed in this Court as *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, Civil Action No. 94–5522(JHR). A related shareholder action, *Berger v. Jasmine, Ltd.*, Civil Action No. 96–2318(JEI), was consolidated with the *McKowan Lowe* action.

5. Jasmine filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey under Chapter 11, which subsequently was converted to Chapter 7. *In re Jasmine, Ltd.*, Case No. 96–101–29. James J. Cain was appointed as trustee of Jasmine's bankruptcy estate.

6. On or about April 29, 1997, Aetna filed this declaratory judgment action as an adversary proceeding in the bankruptcy case, claiming that the D & O Policy should be rescinded because of misrepresentations on the Policy Renewal Application. *Aetna Casualty & Surety Co. v. Jasmine, Ltd.*, Adversary Proceeding No. 97–1132. Reference of the adversary proceeding was withdrawn from the bankruptcy court, and it was consolidated with the *McKowan Lowe* action for all purposes, including trial. The consolidated action is now pending before the Honorable Joseph H. Rodriguez.

7. Aetna claims that the Policy should be rescinded because Jasmine failed to advise Aetna of certain material changes in the information provided in the Policy Renewal Application. The two primary alleged misrepresentations are:

(a) Jasmine represented in the application that it was not a party to any "material litigation." [1] Aetna points out that on November 21, 1994, Jasmine was served with the McKowan Lowe complaint seeking $14 million in damages, which was an amount that approximated more than half the reported value of Jasmine's assets, and that Jasmine did not notify Aetna of this information prior to the effective date of the Policy.

(b) In response to the question: "Has the Applicant changed its outside auditors within the last 12 months?", Jasmine answered, "Yes, in relation to initial public offering." (Policy Renewal Application, Question No. A.5, Ex. "B," Brief of Trustee James J. Cain). Aetna points out that contrary to this representation, on December 9, 1994, Jasmine and its outside auditor, Arthur Anderson, terminated their relationship. According to a Form 8–K that Jasmine filed with the SEC, dated December 9, 1994, Jasmine and Arthur Anderson terminated their relationship in large part because of disagreements that arose as a result of the McKowan Lowe lawsuit. (SEC Form 8–K, December 9, 1994, attached as Ex. "E" to Brief of Trustee James J. Cain).[2]

8. Aetna seeks to settle the adversary proceeding with Jasmine for $125,000, which represents the return of the $110,000 premium that Jasmine paid, plus $15,000 in interest. The bankruptcy trustee seeks Court approval for this settlement, claiming that $125,000 is the maximum value that the bankruptcy estate can realize from the Policy, and, therefore, the

---

1. The particular request on the Policy application stated: "As part of this application, submit a schedule of all material litigation with a brief description of each case filed within the last 12 months or since the date of the last application for directors and officers liability insurance, as well as any adverse judgments that have been rendered against the Applicant or any of its Subsidiaries in the past 12 months." (Policy Renewal Application, Ex. "B," Question No. C.3, Brief of

Trustee James J. Cain). Jasmine responded, "None."

2. Aetna appears to allege a number of other purported misrepresentations, but fails to offer any evidence in support of those allegations. Because the Court finds that Aetna is likely entitled to rescission based on the two primary misrepresentations discussed above, the Court need not address Aetna's other allegations.

settlement is in the best interests of the estate.

## II. CONCLUSIONS OF LAW

### A. Standard for Approving Settlement under B.R. 9019

■ 1. To minimize litigation and expedite the administration of a bankruptcy estate, "compromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir.1996). Under Bankruptcy Rule 9019, the court has the authority to approve a compromise of a claim, provided that the debtor, trustee and creditors are given twenty days' notice of the hearing on approval of compromise or settlement by the trustee.[3] *Id.* The process of court approval requires the court "to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* The court should consider four criteria in striking this balance: (1) the probability of success in the litigation; (2) the likely difficulties in collection of any judgment;[4] (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors. *Id.* (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)); *see also In re Mavrode*, 205 B.R. 716, 721 (Bankr.D.N.J.1997) (Gindin, Chief J.) (considering four factors listed above in determining whether settlement is "fair and equitable").

■ The court is not supposed to have a "mini-trial" on the merits, but should "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re Neshaminy Office Building Assocs.*, 62 B.R. 798, 803 (E.D.Pa.1986); *see also In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D.Pa.1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993).

■ It is the trustee's duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). The trustee has a fiduciary relationship with all creditors of the estate, and it is the trustee's duty to "maximize the value of the estate" for these creditors. *In re Martin*, 91 F.3d at 394.

■ The Third Circuit has noted that a court deciding whether to approve a settlement in bankruptcy "relies heavily on the trustee," and "under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification." *In re Martin*, 91 F.3d at 395.

■ Trustee James Cain claims that the proposed settlement with Aetna maximizes the value of the estate and is otherwise fair and equitable and in the best interests of the estate because Aetna is likely to succeed on the merits, continuing the litigation will only result in an unnecessary and expensive drain on limited estate resources, and the return of premiums is the

---

**3.** Rule 9019 provides:

(a) **Compromise**

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

(b) **Authority to compromise or settle controversies within classes**

After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

(c) **Arbitration**

On stipulation of the parties to any controversy affecting the estate, the court may authorize the matter to be submitted to final and binding arbitration.

**4.** The difficulty of collection is not a factor in this case.

largest benefit the estate could hope to receive. The objectors[5] maintain that none of the factors supports approval of the settlement in this case. This Court agrees with the trustee that given Aetna's likelihood of success, the proposed settlement represents a fair and equitable resolution.

## B. *LIKELIHOOD OF SUCCESS*

### *Standard for Recission: "Knowing" Misrepresentation and Materiality*

■ 2. In order to succeed in its lawsuit, Aetna must prove that Jasmine made material misrepresentations of fact on the Policy application upon which Aetna relied in determining the insurable risk. *Federal Deposit Insurance Corp. v. Moskowitz*, 946 F.Supp. 322, 329 (D.N.J.1996); *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 637–38, 651 A.2d 92 (1995).[6] A material misrepresentation includes a failure to inform an insurer of a change of conditions between the application of the policy and its effective date that are material to the risk. *Moskowitz*, 946 F.Supp. at 331.

The trustee[7] claims that in order to be entitled to rescission, Aetna need only prove that a misrepresentation was made; whether it was innocent or purposeful is not an element of proof. The objectors disagree with the trustee's interpretation of New Jersey law, claiming instead that an insurer must show that the misrepresentation was made "knowingly." Regardless of the outcome of New Jersey law on this issue, there appears to be a provision of the Policy which itself injects a "knowing" standard for recission and which all parties apparently agree is part of the insurance agreement by which they are bound:

> In consideration of the premium charged, this Policy shall not be avoided as to any Insured Person on account of the untruth of the particulars and statements contained in the Application for this Policy unless:
>
> (a) *that Insured Person knew of such statement's untruth,* in which event such knowledge shall be imputed to that Insured Person only; or
>
> (b) *the person making such statement in the Application knew of its untruth,* in which event such knowledge shall be imputed to all Insured Persons and the Company.

(D & O Policy, Endorsement No. 5, Ex. "A," Brief of Trustee James J. Cain) (emphasis added). According to this endorsement, if the person completing the application had knowledge of the falsity of the misrepresentations, that knowledge will be imputed to all the insured directors and officers, and the Policy can be rescinded as to all of them.

The objectors claim that the trustee has no basis whatsoever for concluding that Aetna could demonstrate that the misrepresentations were "knowingly" made, primarily because Aetna has taken no discovery from the Mangels. The objectors contend that by failing to conduct any discovery as to Sam Mangel's "knowledge"—

---

5. For the sake of convenience, the Court will refer collectively to "the objectors" when referencing arguments advanced by the individual directors and officers, along with those of Summit Bancorp.

6. All of the parties appear to agree that New Jersey law applies to Aetna's claims, except for Sands, Saunders, and Henderson, who raise the point (in one inconspicuous sentence) that Connecticut was Aetna's principal place of business, the address on the Policy and the Application, and the probable location of negotiations. Although the parties have not properly raised or briefed the issue,

this Court will apply the law of New Jersey: Jasmine's principal of business was in New Jersey; presumably, the decision making of Jasmine's directors and officers took place in New Jersey; and any alleged improper conduct on part of those directors and officers took place in New Jersey.

7. Both the trustee and Aetna have filed briefs in support of the motion for approval of settlement. For the sake of convenience, I will refer to their collective arguments as those of the trustee, since it is the trustee's motion.

a crucial element of Aetna's claim—the Trustee could not have reasonably evaluated Aetna's likelihood of success. The objectors also claim that discovery is necessary to determine if and when notice of the changed information may have been made to Aetna.

The trustee points out, though, that two Form 8–Ks that Jasmine filed with the SEC during the relevant time period squarely contradict the information in the Policy Renewal Application and that Sam Mangel's knowledge can be demonstrated through those documents. Jasmine's SEC Form 8–K, dated November 21, 1994, references the McKowan Lowe lawsuit seeking $14.7 million that was served on Jasmine on November 21, 1994. (SEC Form 8–K, 11/21/94, Item 5, attached as Ex. "C," Brief of Aetna). Another Form 8–K that Jasmine filed with the SEC, dated December 9, 1994, states that Jasmine and Arthur Andersen mutually agreed to terminate their relationship, in large part because of disagreements that arose as a result of Arthur Andersen's discovery of the McKowan Lowe lawsuit. (SEC Form 8–K, 12/9/94, Item 4(a)(1), Ex. "E," Brief of Trustee James J. Cain). The trustee concludes from a comparison of these two SEC Form 8–Ks with the Policy Renewal Application that contradictory information was supplied by Jasmine and that Aetna will be able to show that the failure to notify Aetna of material changes in the Policy Renewal Application information was done "knowingly."

While the objectors maintain that this proof is not enough and that more discovery is necessary to get to the crucial facts—which include the respective knowledge of Sam and Irving Mangel and whether notice of the changed information was in fact made to Aetna by the Mangels or any of Jasmine's other directors and officers—they themselves would be in possession of such facts, but have failed to

come forward with any evidence to contradict Aetna's proffer. Moreover, this Court takes notice that discovery from the Mangels would be futile, because they have refused to appear for depositions, citing their Fifth Amendment rights. The state of the record might well result in summary judgment for Aetna if this case was positioned at that stage.[8]

3. The objectors further argue that Aetna must prove that the misrepresentations were "material," and Aetna has made no showing of materiality, nor can the issue of materiality be determined on these facts. They point out that Aetna, with knowledge of the same facts it claims would have affected their insuring decision, extended the same insurance to Jasmine for the subsequent policy period, which demonstrates that Aetna would not have considered the information "material" to its risk analysis.

This Court finds, however, that the representations at issue were material as a matter of law. A provision of the Policy expressly states that all statements made in the Policy application are deemed material:

> The Company and the Insured Persons agree that the statements made in the Application are the representations and warranties of the Company and the Insured Persons and that *they shall be deemed material to the acceptance of the risk or the hazard assumed by the Underwriter under this Policy and that this Policy is issued in reliance upon the truth of such representations.*

(D & O Policy, at III(A)(2), Ex. "A," Brief of Trustee James J. Cain) (emphasis added).

Even in the absence of this express manifestation of the parties' intent, there can be no reasonable dispute that a lawsuit seeking damages in an amount approximately equal to more than half of a corpo-

---

8. The Court recognizes that the summary judgment standard of Fed.R.Civ.P. 56 does not govern this motion. The Court is merely taking note of the evidence of record to aid it in its determination of whether Aetna is likely to succeed on the merits.

ration's assets—whether the lawsuit ultimately proved meritorious or not—along with a sudden change in financial auditors, are material facts upon which an insurer bases a risk. Thus, on the record before it, this Court agrees with the trustee that it is likely that Aetna can prove that Jasmine knowingly failed to notify Aetna of material changes in the representations made in the Policy Renewal Application. *See Moskowitz,* 946 F.Supp. at 325–33 (granting summary judgment to insurer and rescinding policy on grounds that corporate insured made misrepresentations on application that were material as a matter of law).

### *Rights of Third–Party Beneficiaries*

4. The objectors further argue that they are third-party beneficiaries to the D & O Policy whose rights cannot be unilaterally extinguished by the proposed settlement. There is no question that the directors and officers covered under the Policy are third-party beneficiaries; however, the rights of third-party beneficiaries typically are subject to the same defenses that the promisor (*i.e.,* Aetna) could assert against a claim for coverage by the promisee (*i.e.,* Jasmine). *See Agathos v. Starlite Motel,* 977 F.2d 1500, 1505 (3d Cir. 1992) (citing Calamari & J. Perillo, The Law of Contracts § 17–10 (3d ed.1987)). The scope of third-party beneficiary rights is ultimately established by the manifest intent of the contracting parties as expressed in the body of the instrument.

Significantly, the Aetna D & O Policy contains Endorsement No. 5, which imputes a knowingly made false statement on the policy application to all insureds. This endorsement distinguishes this policy from

the one in *Wedtech Corp. v. Federal Insurance Co.,* 740 F.Supp. 214 (S.D.N.Y.1990), which the Mangels cite as "the benchmark case on this issue" (Mangel Supp. Brief, at 8). The policy in *Wedtech* contained a severability provision stating that "no statement in the application or knowledge on the part of one insured is to be imputed to another insured in determining the availability of coverage." 740 F.Supp. at 219. It was on this basis that the *Wedtech* court found that a purportedly fraudulent statement in the policy application did not operate to rescind the policy as to all directors and officers.[9] *Id.* Thus, *Wedtech* does not provide the appropriate analysis here. In *Wedtech,* because of the severability provision, the insurer was required to prove its case for rescission separately against each director and officer. Here, by contrast, because of Endorsement No. 5, if Aetna can prove that the alleged misrepresentations in the policy application were knowingly made, then the policy may be rescinded as to all insureds, including the purportedly innocent third-party beneficiaries. *Accord Bird v. Penn Central Co.,* 341 F.Supp. 291 (E.D.Pa.1972) (finding that fraudulent misrepresentation by corporate officer on application for D & O insurance policy voided that policy as to all other directors and officers, regardless of whether they were innocent third-party beneficiaries); *Shapiro v. American–Home Assur. Co.,* 584 F.Supp. 1245, 1251–52 (D.Mass.1984) (holding that the parties could have negotiated, but did not, a provision of the D & O policy to protect "innocent" insureds); *INA Underwriters Ins. Co. v. D.H. Forde & Co.,* 630 F.Supp. 76 (W.D.N.Y.1985) (finding no coverage for

---

9. In *Wedtech,* a bankrupt corporate debtor brought a declaratory judgment action seeking a judgment that a D & O policy was not void *ab initio* as to all directors and officers. The insurer had previously notified the corporation that it considered the policy void because of fraudulent misrepresentations and concealments in the policy application. 740 F.Supp. at 217. In lieu of filing an Answer to the declaratory judgment complaint, the insurer moved to dismiss, claiming that the

corporate debtor did not have standing; the claim was deficient for failure to plead certain conditions precedent; and the case was not ripe because indemnification had not occurred. In addition to deciding these justiciability arguments, the court granted the plaintiffs' motion for summary judgment, ruling that due to the severability provision in the policy, grounds for rescission against one insured did not operate to rescind the policy as to all the other insureds. *Id.,* at 218–22.

innocent insureds because misrepresentations on policy application rendered policy void *ab initio*).

Accordingly, while keeping in mind that under the rules of bankruptcy I need not and should not hold a "mini-trial" on the merits of all the factual and legal issues, I conclude on the basis of the record before me that Aetna's likelihood of success weighs strongly in favor of approving the proposed settlement.

## C. *COMPLEXITY, EXPENSE and DELAY TO ESTATE*

5. I further conclude that given the likelihood of success, continuing to litigate this action would only result in an unnecessary drain of estate resources. The objectors argue that Aetna is reaping the benefit of the work that the creditors and shareholders are doing, by virtue of the consolidation of Aetna's action with the creditor and shareholder actions, and that, therefore, there is no cost to the estate of waiting out the resolution of the other claims. They contend that discovery and motion practice in the other actions are coming to a close, and the cases are due to be resolved soon.

The trustee and Aetna claim, on the other hand, that the consolidated Jasmine litigation is complex and time-consuming. Discovery disputes have arisen with relative frequency and contention. Moreover, the trustee is not a party to the other aspects of the consolidated action, and Aetna's declaratory judgment action is one of the last steps towards final distribution of the estate.

The Court agrees with the trustee that estate funds would be unnecessarily expended by continuing to litigate Aetna's claim. While some of the factual and legal issues in this action may overlap with those in the creditor and shareholder actions, Aetna's claim of equitable fraud in the information that was provided to Aetna and its sought-after relief of rescission are very different from the issues raised in the other actions. The trustee would be obligated to spend costs and counsel fees on behalf of Jasmine in conducting discovery, filing and responding to motions, and trial, regardless of what the creditors and shareholders are doing. And, the objectors' contention that little work remains to be done is not borne out by the current state of discovery and motion practice. Under these circumstances, the attorneys' fees and costs paid by the estate would very soon reach the value of the proposed settlement itself. Since the trustee is not a party to the remainder of the consolidated action, early resolution of this declaratory judgment action serves the statutory purpose of closing the estate and distributing its assets as expeditiously as possible. Thus, the complexity and delay occasioned by continuing this litigation also weigh in favor of approving the proposed settlement.

## D. *PARAMOUNT INTEREST OF CREDITORS*

6. According to the trustee, the $125,000 settlement is the best that Jasmine's more than 200 creditors can hope for, since Jasmine does not stand to gain any of the $2 million in proceeds, and there is no reason to wait any longer to realize that amount. He estimates that approximately $80,000 will be available to be distributed to Jasmine's priority unsecured creditors after administrative costs are paid.

The objectors argue that they, as directors and officers, are also creditors of Jasmine because they have contribution and indemnity rights against Jasmine under the Policy and the certificate of incorporation, and they also have indemnification and contribution claims against Jasmine in the consolidated actions and the state action. They contend that the Trustee has unreasonably failed to give any consideration to their status as creditors. They also claim that Summit Bancorp, as a direct creditor of Jasmine, will be prejudiced by the settlement because

if Aetna lost its case, Summit may be able to collect on any judgment it obtains against the directors and officers in the state case.

■ While the objectors' status as creditors is to be taken into consideration, it is not, by itself, determinative of the fairness of the proposed settlement. Because of Aetna's likelihood of success, the chance that the directors' and officers' claims for indemnification and contribution will be satisfied from the insurance proceeds, or that Summit Bancorp's claims against the directors and officers will be satisfied from the insurance proceeds, is largely speculative. The trustee has a fiduciary duty towards *all* creditors of the estate, not just the limited class of creditors comprising the objectors herein. *See In re Martin,* 91 F.3d at 394. The trustee has submitted that in his business judgment, the creditor body as a whole will stand to gain the most from the proposed settlement.[10]

### E. *TRUSTEE'S AUTHORITY TO SETTLE WITH AETNA*

■ 7. The objectors claim that since the proceeds of the Policy belong to the directors and officers, and not Jasmine, the trustee has no authority to extinguish their rights to proceeds that are not property of the bankruptcy estate. Several cases do hold that D & O policy proceeds are not property of the debtor corporation's bankruptcy estate. *See, e.g., In re Louisiana World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987); *In re First Central Financial Corp.,* 238 B.R. 9 (Bankr. E.D.N.Y.1999); *In re Daisy Systems Securities Litig.,* 132 B.R. 752 (N.D.Cal.1991).

This Court finds, however, that the trustee's authority over the bankruptcy estate extends to the Aetna D & O Policy

and its proceeds. *See* 11 U.S.C. § 541(a) (bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *In re Vitek, Inc.,* 51 F.3d 530, 533 (5th Cir.1995) ("The language of § 541(a)(1) is unquestionably broad enough to cover a debtor's interest in liability insurance.") Jasmine's duty of indemnification was established prior to its filing for bankruptcy by the Policy itself. (*See* D & O Policy, Section IV(B)(4), Ex. "A," Brief of Trustee James J. Cain) ("For the purposes hereof, the certificate of incorporation, by-laws and resolutions of the Company *shall be deemed* to provide indemnification to the Insured Persons to the fullest extent permitted by law.") (emphasis added). Since Jasmine's duty of indemnification was established and not merely speculative, it would have been entitled to proceeds under the Policy if there was coverage. Thus, Jasmine had an indemnification interest in the proceeds, and the proceeds are property of the estate and subject to the authority of the trustee under these circumstances. *See In re Sacred Heart Hospital of Norristown,* 182 B.R. 413, 419–21 (Bankr.E.D.Pa.1995) (criticizing the reasoning of *In re Louisiana World Exposition* and holding that "an indemnification interest in proceeds [of a D & O liability policy] is sufficient to bring those proceeds into the estate"); *In re Minoco Group of Cos., Ltd.,* 799 F.2d 517, 519 (9th Cir.1986) ("First State argues on appeal that the excess officers and directors liability policies are not 'property of the estate' within the meaning of § 541(a) because the policies benefit only the officers and directors, not Minoco. We disagree. As the bankruptcy court found, the policies also benefit Minoco because the policies insure Minoco against indemnity claims made by officers

---

10. The objectors also argue that the $125,000 is not a compromise at all, but instead a complete acquiescence to Aetna, since Aetna would be required to return the premium anyway in the event of rescission. They ask that this motion be denied at this stage so that the trustee can have more time to negotiate a

larger settlement. While the Court acknowledges this inauspicious fact, the trustee has represented to the Court that Aetna is not willing to settle for more than the return of premium. The Court refuses to order the trustee to expend more litigation costs and fees towards an effort that is likely futile.

and directors."); *In re Circle K Corp.*, 121 B.R. 257 (Bankr.D.Ariz.1990) (finding D & O policies and their proceeds to be property of the bankruptcy estate).

## III. *CONCLUSION*

The Court recognizes the unfortunate circumstance befalling the directors and officers of being denied access to $2 million in insurance coverage; however, those proceeds would not be available anyway under a Policy that was deemed void as a result of material misrepresentations on the Policy application. Under the bankruptcy laws, the trustee is obligated to maximize the value of the estate, and the Court agrees with the trustee that, given the likelihood of success on the merits, the proposed settlement of $125,000 represents the maximum value that the estate could realize. Accordingly, it is respectfully recommended that this Court enter an Order approving the proposed settlement.

I am filing the original of this Report and Recommendation with the Clerk and mailing a copy of it by regular mail to counsel for all parties. In addition, I am informing the litigants that action may be taken upon this Report and Recommendation in Judge Rodriguez' discretion if written objections to this Report and Recommendation are not received within ten (10) days of service of this letter. All briefs and supplemental briefs that were filed in connection with this motion will be forwarded to Judge Rodriguez for his consideration, and the parties are hereby advised that any objections to this Report and Recommendation that contain redundant argument will not be considered. This procedure is governed by Rule 72.1(c) of the Local Rules of the United States District Court for the District of New Jersey.

The litigants are hereby further advised that a party who fails to timely object to the Magistrate Judge's findings and recommendations may not thereafter raise objections in the District Court or raise such issues for the first time upon appeal of an Order of the District Judge.

## *ORDER*

THIS MATTER having been brought before the Court upon motion to reconsider this Court's Report and Recommendation dated December 15, 1999, which recommended that the Trustee's Motion to Approve a Settlement Between Jasmine, Ltd. and Aetna Casualty & Surety Co. be approved;

IT APPEARING TO THE COURT that the Report and Recommendation provided that all objections were to be filed with the District Judge, Honorable Joseph H. Rodriguez, in accordance with Local Rule 72.1(c)(2); and

IT FURTHER APPEARING TO THE COURT that a Report and Recommendation is not an order or judgment for which a motion to reconsider may be filed, *see* Local Rule 7.1(g);

IT IS this **6th day of January, 2000** hereby

**ORDERED** that the motion to reconsider is **DENIED**. All papers submitted in support of the motion to reconsider will be forwarded to Judge Rodriguez for his consideration and deemed to be objections to the Report and Recommendation.